## WILSON AMES

*v.*

## ROBERT MOIR et al.

*Filed at Ottawa October 31, 1889.*

1. CONTRACTS—*contract in writing—not signed by the party sought to be charged.* Where one party gives another his written agreement to purchase personal property, in which the buyer and seller are both named, and the price to be paid and the time of the delivery are fixed, such written contract will bind the seller receiving it, the same as if he also had signed it. Such a paper is a written contract, within the meaning of the first section of the Limitation act of November 5, 1849.

2. SALES—*refusal of buyer to pay—on delivery or offer to deliver—rights and remedies of the seller.* A contract for the sale of goods can not be rescinded, and at the same time an action be maintained upon it for the contract price of the goods. But where the purchaser fraudulently obtains possession without paying, delivery and payment being concurrent acts, the vendor may repossess himself of the property by replevin, and thereby preserve his lien for the price, without rescinding the sale.

3. Where the buyer of goods refuses to pay on delivery, or an offer to deliver the goods, the vendor may store the same for the buyer, give notice that he has done so, and then recover the full contract price; or he may keep the goods, and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery; or the vendor may sell the goods to the best advantage, and recover of the vendee the loss, if the goods fail to bring the contract price.

4. The vendor's remedy, after a re-sale, made in the absence of an express reservation of the right, is in assumpsit on the original contract, which will not be rescinded by the re-sale. So when the vendor is unable to regain possession of his goods wrongfully taken, for the reason that the fraudulent vendee has pledged them to an innocent party, without notice of the vendor's rights, the latter, notwithstanding he may have replevied the goods, may sue the vendee for the original price, when such vendor is finally defeated in his action of replevin.

5. SAME—*fraud on part of buyer—evidence to establish it.* Under a contract to purchase one hundred barrels of highwines at a given price per gallon, the vendor to deliver within a given time after being called on for that purpose, the purchaser induced the agents of the vendor to deliver the highwines, and before the delivery was completed, absented himself, so that no demand of payment could be made. The vendor's agent then placed the goods in the vendee's warehouse, in the charge of the porter of the warehouse, till the next morning. During the night the vendee shipped all the goods to distant points, drawing money on bills drawn by him on the consignee : *Held,* that the debt of the vendee was not entirely created until the highwines were placed in his possession, and that these were facts from which the jury might infer fraud, within the meaning of the Bankrupt law.

6. On an issue whether a debt was created by the fraud of the defendant, within the meaning of the Bankrupt law, any evidence is competent which tends to establish fraud on his part. Its sufficiency to prove fraud is a question for the jury.

7. AGENCY—*authority of agent.* A defendant offered to prove that he settled a prior suit of replevin with the plaintiff's agents a short time after it was commenced, which the court refused to allow. No authority was shown in the agents to make any settlement: *Held,* that the proposed evidence was properly refused. Without authority the alleged agents could not bind their supposed principal.

APPEAL from the Appellate Court for the First District ;— heard in that court on appeal from the Superior Court of Cook county ; the Hon. KIRK HAWES, Judge, presiding.

MR. JOHN C. REID, and Mr. WILLIAM H. BARNUM, for the appellant :

The paper in this case is not "other evidence of indebtedness in writing," within the meaning of the Statute of Limitations. It is not a contract, for want of mutuality. *Derickson* v. *Krause,* 4 Bradw. 510 ; *Olney* v. *Howe,* 89 Ill. 560 ; *McKin-*

*ley* v. *Watkins*, 13 id. 142; 1 Parsons on Contracts, (5th ed.) 449, 582; *Waggeman* v. *Bracken*, 52 Ill. 469; *Railroad Co.* v. *Johnson*, 34 id. 389; *Dunning* v. *Price*, 56 id. 338; *Jassoy* v. *Horn*, 64 id. 379; *Board* v. *Shipley*, 77 Ind. 550; *Stagg* v. *Compton*, 81 id. 171; *Pulse* v. *Miller*, 81 id. 190; *Board* v. *Miller*, 87 id. 257; *McCurdy* v. *Bowes*, 88 id. 583; *High* v. *Board*, 92 id. 580; *Heckleman* v. *Board*, 94 id. 36; *Higham* v. *Harris*, 108 id. 247; *Tomlinson* v. *Briles*, 101 id. 538.

Moir & Co. never became a party to the writing, they never having signed it, so as to make it binding on them. *Thomas* v. *Caldwell*, 50 Ill. 140; *Kalamazoo* v. *McCallister*, 40 Mich. 84; *Baker* v. *Johnson County*, 33 Iowa, 151; *Iron Works* v. *Newhall*, 34 Conn. 70; *De Burski* v. *Paige*, 47 Barb. 172.

When a sale is rescinded for fraud, no recovery can be had on the contract for the price agreed upon. *Doane* v. *Lockwood*, 115 Ill. 490; *Kellogg* v. *Turpie*, 93 id. 265; *Moller* v. *Tuska*, 87 N. Y. 166; *Bowen* v. *Mandeville*, 95 id. 240; *Butler* v. *Hildreth*, 5 Metc. 49.

Replevin to gain possession of the goods is evidence of a rescission of the sale. *Foundry Co.* v. *Hersee*, 103 N. Y. 27; *Powers* v. *Benedict*, 88 id. 605; *Burnett* v. *Smith*, 4 Gray, 52.

Messrs. EDSALL & EDSALL for the appellees:

A written contract signed by only one of the parties thereto, but accepted and acted upon by the other, is the contract of both parties, and subject to all the incidents of written contracts, and consequently can not be varied by parol. *Brandon Manf. Co.* v. *Morse*, 48 Vt. 322; *Abrams* v. *Pomeroy*, 13 Ill. 133; *McCloskey* v. *McCormick*, 37 id. 66; *Liverpool Bank* v. *Eccles*, 4 H. & N. 139; *Harnor* v. *Groves*, 80 E. C. L. 667; *Hooker* v. *Hyde*, 61 Wis. 204; Bishop on Contracts, (1st ed.) chap. 13, secs. 167, 173; Bishop on Contracts, (enlarged ed.) secs. 342, 364; Leake on Law of Contracts, 183, 184.

The contract appears to have been fully executed or performed on the part of appellees. In such case, mutuality in

its obligations becomes immaterial. *Mills* v. *Blackall*, 63 E. C. L. 358.

The limited option as to time of delivery of the wines within the month of July did not vitiate the contract. *Logan* v. *Musick*, 81 Ill. 415.

The action was founded on a simple contract in writing, and not upon promises not in writing, and therefore the case is governed by the first section of the Limitation law of November 5, 1849, prescribing sixteen years' limitation, and not by the second section, prescribing a limitation of five years. Gross' Stat. (ed. of 1869,) 430.

The sixteen years' limitation applies to actions founded on executory contracts in writing, of this character, signed only by the defendant, and to cases where it requires proof not appearing upon the face of the papers sued on, to make out a cause of action. *Railroad Co.* v. *Johnson*, 34 Ill. 389; *Dunning* v. *Price*, 56 id. 338; *Wing* v. *Evans*, 73 Iowa, 409; *Prevatt* v. *Runyon*, 12 Ind. 174.

The acts or declarations of an assumed agent who has no authority can not be made the basis of an estoppel. *Railroad Co.* v. *Hay*, 119 Ill. 494.

The contract was a sale for cash, and not upon credit. When the one hundred barrels of highwines were called for by Ames, and selected and identified, and delivered at Ames' store by appellees' agents as the goods sold under this contract, the general property in the wines passed to Ames, while a lien for the contract price, or a special property therein, remained in the appellees until the goods were paid for or the lien was waived. Benjamin on Sales, (ed. of 1888, Bennett's notes,) secs. 1, 358, 796; *Wade* v. *Moffett*, 21 Ill. 110; *Webster* v. *Granger*, 78 id. 230; Hare on Contracts, pp. 436, 446-451, 455.

Ames failing to pay for the highwines, as required by the contract, when the same were delivered under the contract with the expectation of immediate payment, the appellees, as

against him, had the right to retain (or regain, if necessary,) the possession of the goods, sell them at the market price, and sue him on the contract, and recover that portion of the contract price not paid by the application thereto of the net proceeds of the re-sale. *Bagley* v. *Findlay,* 82 Ill. 524; *Ullmann* v. *Kent,* 60 id. 271; *Saladin* v. *Mitchell,* 45 id. 79; *Canadian Bank* v. *McCrea,* 106 id. 283; Benjamin on Sales, (2d ed.) p. 730, secs. 788, 794; *Dustin* v. *McAndrews,* 44 N. Y. 72; Hare on Contracts, 449.

The right of a vendor, under such circumstances, when payment is refused, to re-sell the goods to enforce his vendor's lien, is undeniable. *Bagley* v. *Findlay,* 82 Ill. 524; Benjamin on Sales, secs. 787, 788, 794.

The very existence of a vendor's lien presupposes a valid contract of sale. In contemplation of law, the vendor makes the re-sale as the vendee's pledgee or agent, thus recognizing the general property in the goods to be in the vendee, and that the contract of sale is still subsisting. And such re-sale, to enforce a vendor's lien, will not operate as a rescission or disaffirmance of the original contract of sale. Ibid.; *McLean* v. *Dunn,* 13 E. C. L. 710; *Ullmann* v. *Kent,* 60 Ill. 271.

If notice of re-sale was necessary, the bringing of the replevin suit was sufficient. (*Saladin* v. *Mitchell,* 45 Ill. 85.) But the established rule in this State is, that such notice is unnecessary. *Ullmann* v. *Kent,* 60 Ill. 271.

There can be no estoppel by the election of an inconsistent remedy, without knowledge of the party's rights, and of the facts affecting the same, so that he may fairly and understandingly make an election of remedies. 1 Bigelow on Estoppel, (2d ed.) 503; 1 Herman on Estoppel, (ed. of 1886,) p. 1147, sec. 1029; 2 Story's Eq. Jur. sec. 1097; *Cowdrey* v. *Hitchcock,* 103 Ill. 271; *Foundry Co.* v. *Hersee,* 103 N. Y. 25; *Hays* v. *Midas,* 104 id. 602; *Derickson* v. *Krause,* 4 Bradw. 507; *Kraus* v. *Thompson,* 30 Minn. 66; *Tillotson* v. *Mitchell,* 111 Ill. 519.

When the discharge in bankruptcy is pleaded, the plaintiff may reply that the debt was created by the fraud of the defendant. Bump on Bankruptcy, (3d ed.) 742; *Stewart* v. *Emerson*, 52 N. H. 301; *Classen* v. *Schoenemann*, 80 Ill. 304; *Stokes* v. *Mason*, 10 R. I. 261; *Broadnax* v. *Bradford*, 50 Ala. 270.

Intentionally and wrongfully disposing of the highwines without the knowledge or consent of the plaintiffs, in such manner as to destroy their vendors' lien thereon, and thereby defrauding them of the contract price, constitutes such actual or positive fraud as to prevent the debt thus created being barred by the discharge in bankruptcy. *Classen* v. *Schoenemann*, 80 Ill. 304; *Darling* v. *Woodward*, 54 Vt. 101.

It was unnecessary that the fraudulent intent should have existed when the contract was made. It was sufficient that the fraud was perpetrated when the debt was finally created. *Hinckley* v. *Lewis*, 45 Ill. 327; *Mathews* v. *Cowan*, 59 id. 342.

The making of the contract did not completely create the debt. This was only one of the incipient steps in that direction. The debt was not fully created until the wines were conditionally delivered, when Ames, by his wrongful act, fraudulently converted the conditional delivery into an absolute one in favor of his pledgee, and thereby defeated the vendors' lien without paying for the wines, as required by the contract. The debt was thus created by the actual and positive fraud of the defendant, within the meaning of the Bankrupt act. *Classen* v. *Schoenemann*, 80 Ill. 304; *Darling* v. *Woodward*, 54 Vt. 101.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of assumpsit, brought by Robert Moir & Co., in the Superior Court of Cook county, against Wilson Ames, to recover the price of one hundred barrels of highwines sold by the plaintiffs to the defendant on the 9th day of June, 1870. The action was brought upon a contract in writing, which was as follows:

"Chicago, *June 9, 1870.*

"I have this day bought of Robert Moir & Co. one hundred (100) barrels highwines, 'iron bound,' at one dollar seven cents ($1.07) per proof gallon. The conditions of sale are as follows: The buyer can call from 1st July to 20th of same month by giving three days' notice, and if not called for by the 20th July, the seller has the privilege of delivering up to the end of July by giving three days' notice, to be delivered in fifty barrel lots. To insure the fulfillment of this contract, a margin of $300 will be put up by both parties. Wilson Ames."

. This instrument of writing, after it was executed by Ames on the day it bears date, was at once delivered to the agents of Moir & Co., and accepted by them. On the same day, a margin of $300 was put up by each party, as provided in the agreement. It also appears, that on the 15th day of July, 1870, Ames notified the agents of Moir & Co. to deliver the highwines. Upon receipt of the notice, the highwines were, on July 18, delivered by Moir & Co., and accepted by Ames, but Ames has never paid for the goods.

This action was not commenced until the 13th day of January, 1886, and the first question presented by the record is, whether the action is barred by the Statute of Limitations. The statute in force at the time the agreement was executed, was the act of November 5, 1849, sections 1 and 2 of which are as follows:

"Sec. 1. All actions founded upon any promissory note, simple contract in writing, bond, judgment, or other evidence of indebtedness in writing, made, caused or entered into after the passage of this act, shall be commenced within sixteen years after the cause of action accrued, and not thereafter.

"Sec. 2. All actions founded upon accounts, bills of exchange, orders, or upon promises not in writing, express or implied, made after the passage of this act, shall be commenced within five years next after the cause of action shall have accrued, and not thereafter." Gross' Stat. (ed. 1869,) p. 430.

It is strenuously insisted in the argument, that the paper executed by Ames is not a simple contract in writing, within the meaning of the first section of the act of 1849. The action was commenced before the expiration of sixteen years after the cause of action accrued, and if the agreement executed by Ames is a simple contract in writing, within the meaning of section 1 of the act, then the action is not barred. If, on the other hand, section 2 is to control, then the action is barred.

Bishop on Contracts, (enlarged ed.) section 163, defines a written contract as follows: "A written contract is one which in all its terms is in writing." In *Abrams* v. *Pomeroy*, 13 Ill. 133, a contract of guaranty, executed only by the guarantor, was held to be a written contract, and that it could not be varied by parol evidence. In *Illinois Central Railroad Co.* v. *Johnson*, 34 Ill. 393, an agreement executed by the agent of the railroad company, binding it to transport and deliver certain goods, was held to be a written contract, within the purview of the statute limiting actions on such contracts to sixteen years. In *Dunning* v. *Price*, 56 Ill. 338, a plea of Statute of Limitations of five years was held not to be a good plea to a count in an action of assumpsit on a written contract, wherein the assignee of a judgment agreed to pay to the judgment creditor a certain sum upon certain specified conditions. In *Jassoy* v. *Horn*, 64 Ill. 379, this court held that an action against a bank, on an account evidenced by the entries in the depositor's bank book, was not, under the Statute of Limitations of 1849, barred until the lapse of sixteen years after the cause of action accrued.

It is true the contract in question was not executed by Moir & Co.; but notwithstanding that fact, we think it was their contract, and when they accepted it they became bound by its terms. From the face of the paper the parties to the contract are plainly indicated. Ames is described as the purchaser, and Robert Moir & Co. as the sellers. The goods bought and sold were clearly described, and the amount to be paid and the

time when the goods were to be delivered were specified; and to insure the fulfillment of the contract by the respective parties a margin of $300 was put up. Indeed, we find no element wanting in the paper to make it a complete and obligatory contract, binding upon each of the parties. When Moir & Co. accepted the paper as a contract, they became bound by its terms and conditions as completely as if they had in form signed the paper. It was, in our opinion, a contract in writing, within the meaning of the statute. See, also, *Plumb* v. *Campbell*, 129 Ill. 101.

After the highwines had been delivered, late in the afternoon of July 18, Ames absented himself from his place of business, and could not be found by the agents of Moir & Co. to make a demand of payment for the highwines. They directed the porter in charge of Ames' warehouse to take care of the goods until morning, when they would call for the pay. When the agents called in the morning, Ames was nowhere to be found, and they found that he had shipped fifty barrels of the highwines for New York, and the remaining fifty barrels were loaded on cars ready for shipment. Phillips & Carmichael immediately replevied the fifty barrels which were found on cars in Chicago, and went on to Detroit, Michigan, where they overhauled the other fifty barrels, and they were also replevied. Phillips & Carmichael sold the wines thus replevied to Shufeldt & Co. at ninety-seven cents per gallon, the market price at that time, and deposited the proceeds in bank to await the result of the replevin suits. It appears that between the time the wines were delivered, late in the afternoon of July 18, and the time the agents reached Ames' store next morning, Ames had sent all the wines to the Michigan Central depot, shipped them, obtained bills of lading, which were attached to drafts on the consignee in New York,—one for $2800, and the other for $2900,—which drafts he discounted at the National Bank of Commerce on the security of the bills of lading. The replevin suits were defended by the National Bank of Com-

merce, and the defense interposed, that the bank was the pledgee of the highwines from Ames, in good faith, and without notice of Moir & Co.'s rights, was, in the end, sustained, (see *Michigan Central Railroad Co.* v. *Phillips,* 60 Ill. 190,) and the money realized on the sale of the highwines to Shufeldt & Co. was turned over to the National Bank of Commerce in payment of the drafts.

In view of the fact that the wines were thus replevied and sold by the agents of Moir & Co., it is insisted that Moir & Co. elected to rescind the contract under which the highwines were sold to Ames, and having so elected, they can not now maintain an action upon it. It may be conceded that a contract for the sale of goods can not be rescinded and at the same time an action be maintained upon it for the contract price of the goods. But we do not understand that the contract in this case was rescinded, or that any effort whatever was made to rescind the contract. When the wines were delivered, Moir & Co. were entitled to payment. The delivery and payment were concurrent acts, and Moir & Co. were not bound to part with the absolute possession of the goods until they received the price named in the contract. In other words, they had a lien on the goods for the purchase money, which they were under no obligations to relinquish until payment was made. In *Canadian Bank* v. *McCrea,* 106 Ill. 281, this court held, that where goods are placed by the vendor in the hands of the purchaser in expectation that he will immediately pay the price, and he fails to do so, the vendor is at liberty to regard the delivery as conditional, and may at once reclaim the goods. But by holding the possession of the goods, or reclaiming them after the purchaser refuses to pay, the contract of sale is not thereby rescinded. The vendor merely retains possession to enforce his lien as vendor.

What are the rights of a vendor of goods where the vendee refuses to pay upon delivery or an offer to deliver goods? This question arose in *Bagley* v. *Findlay,* 82 Ill. 525, and this

court held that the vendor had three remedies : First, the vendor may store the goods for the vendee, give notice that he has done so, and then recover the full contract price; second, he may keep the goods, and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery; third, the vendor may sell the goods to the best advantage, and recover of the vendee the loss, if the goods fail to bring the contract price. The same rule is laid down in Benjamin on Sales, (2d ed.) sec. 788. Here, the possession of the goods was fraudulently obtained, with the view to ship them out of the State, and not pay the purchase money agreed to be paid. As against Ames, Moir & Co. had the right to replevy the goods, not for the purpose of rescinding the contract, but for the purpose of asserting the vendor's lien and holding the possession of the goods until Ames should pay for the same. It turned out, however, that the action of replevin was unavailing, as the goods had, by the act of Ames, passed into the custody of innocent purchasers before they were reached by the writ of replevin, and the proceeds of the goods were used in payment of the advances of the National Bank of Commerce. Benjamin on Sales, section 735, (2d ed.) says : "The vendor's remedy, after a re-sale made in the absence of an express reservation of the right, is assumpsit on the original contract, which was not rescinded by the re-sale." This was the course pursued here, and we regard it correct.

We have been referred, in the argument, to *Kellogg* v. *Turpie*, 93 Ill. 265, and *Doane* v. *Lockwood,* 115 id. 490, and also to cases decided in the courts of other States, where it has been held that the rescission of a contract of sale, where there was fraud in the contract, was inconsistent with a subsequent action on the contract,—that if the contract was rescinded by the vendor on the ground of fraud in the contract, a subsequent action on the contract itself could not be maintained. We concur fully in the law as laid down in these cases, but they have no application to the facts of this case. As heretofore

stated, the commencement of the action of replevin was not a rescission of the contract by Moir & Co., but it was a proceeding to enforce the vendor's lien. To place the wines in that position the vendors had the right to hold them in until the vendee should pay for them.

It is also contended that Ames' discharge in bankruptcy was a bar to the action. Section 5117 of the Bankrupt act is as follows: "No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." Whether the debt in this case was created by the fraud of Ames, was a question of fact, upon which the judgment of the Appellate Court is conclusive.

But it is said, incompetent evidence was admitted upon this question. No evidence was introduced except such as tended to establish fraud on behalf of Ames, and the sufficiency of the evidence was a question for the jury.

But it is said, the debt was created when the contract was executed,—June 9, 1870,—and up to this time there was no fraud on the part of Ames. The debt was not entirely created until Ames induced the agents of Moir & Co. to place the wines in his possession, and if he obtained the possession by fraud, with the intent to ship the goods out of the country, and thus defeat the lien of the vendors, these were facts from which the jury might infer fraud, within the meaning of the Bankrupt law. (*Darling* v. *Woodward*, 54 Vt. 101.) It is apparent, from the evidence, that Ames had no intention of paying for the wines when he called for them on the 15th day of July. His object seemed to be to get possession and control of the wines, and convert them to his own use, without payment. This the evidence tends to show he did, and thus the debt was created. We think the evidence submitted to the jury was competent.

The defendant offered to prove that Ames settled the action of replevin with Phillips & Carmichael a short time after the suit was commenced. The offered evidence was excluded, and

the decision of the court is relied upon as error. It nowhere-
appeared that the agents had any authority from Moir & Co.
to make any settlement, and in the absence of authority, what
they may have done would not be binding on Moir & Co.

Objection is made to the ruling of the court in the instruc-
tions to the jury. It is said, the first and third given for the
plaintiff were erroneous. The court, in those instructions,
placed a construction on the written contract read in evidence,
which it was proper to do. The fourth and eighth instructions.
given for plaintiff are criticized, but we perceive no substantial
objection to them.

Three instructions were given for the defendant, and several
others were refused, and the court gave one instruction on its.
own motion. We have examined the instructions given and
those refused, and, without entering upon a discussion of those
given or refused, we are satisfied that the law involved in the
case was fairly given to the jury, and that, so far as instruc-
tions are concerned, no substantial error was committed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*