HENRY MEMORY

*v.*

HERMANN NIEPERT.

*Filed at Ottawa January 21, 1890.*

1.   CONTRACTS—*whether a contract is in writing—or to be regarded as a verbal contract.*   A written contract is one which, in all its terms, is in writing ; but a contract partly in writing and partly oral is in legal effect an oral contract.

2.   While a written contract not under seal is not the contract itself, but is only evidence of the contract, yet, when deliberately reduced to writing, it is the only evidence of the terms of the contract.

3.   The delivery of a writing, and its acceptance and adoption by the party to whom delivered, being facts *dehors* the writing, must be proved by extrinsic evidence ; but when mutuality is established by proof of the acceptance of the writing, the contract, notwithstanding such resort to parol, is a contract all of which is in writing.

4.   SAME—*"written contract"—within the Statute of Limitations.*   The agent of a party made and delivered to another a writing addressed to the latter, in which the agent recited that the first party had sold to the latter a lot of bacon, and gave the price, terms, and showing a complete contract of sale :   *Held,* that such contract was a contract in writing, within the meaning of the sixteenth section of the Limitation act.

5.   SAME—*mutuality—contract not signed by the party sought to be charged.*   A party, by accepting and adopting a written contract not signed by him, but by the other party alone, thereby assents and agrees to its terms on his part, and the law implies a promise to perform.   Such a contract is not void for want of mutuality.

6.   SAME—*contract of sale—import of the word "sold."*   A writing signed by one party only, showing that he has "sold" goods to the other, is not a mere proposition requiring acceptance before it is evidence of a sale.   The word "sold" imports a consummated contract of sale, and such a writing affords evidence of a sale on the terms therein set forth.

7.   SAME—*contract of sale—as to the mode of payment—the contract construed.*   The agent of A having negotiated a sale of bacon for A to B, of Bremen, Germany, sent B a letter, which recited, in substance, that A had, through the writer, sold to B 250 boxes of American bacon, at twenty-five marks for 110 pounds, Engl., cost and freight Bremen, against draft at sixty days' sight, or banker's reimbursement, in which

| | |
|---|---|
| 131 | 623 |
| 142 | 277 |
| 142 | 568 |
| 41a | 432 |
| 131 | 623 |
| 152 | 301 |
| 131 | 623 |
| 54a | 685 |
| 58a | 239 |
| 131 | 623 |
| 63a | 252 |
| 131 | 623 |
| 167 | 372 |
| 131 | 623 |
| 85a | 377 |
| 131 | 623 |
| 206 | [5]166 |
| 206 | [3]167 |
| 108a | [5]551 |
| 131 | 623 |
| 208 | [2]382 |
| 110a | [2]100 |
| 110a | [2]101 |
| 110a | [3]890 |

case one-half per cent allowance to be returned, acceptance on delivery of documents, shipments to be made December or January, 1880, by rail to New York or Baltimore, and thence by steamer to Bremen: *Held,* that the contract provided for payment by the seller's draft on the buyer at sixty days' sight, but in case the buyer should procure a bank to guarantee the draft, or perhaps cash it, one-half of one per cent should be returned to the buyer: *Held, also,* that the contract was complete without such clause giving the option, as that related only to the mode of payment.

8. APPEAL—*finding of facts—presumption.* Where the oral evidence given on a trial tends to show a contract consisting of a proposition submitted by one party through his authorized agent, and accepted by the other, and the case comes through the Appellate Court, to this court, it must be presumed, in affirmance of the judgment of the Appellate Court, that the facts which the evidence thus tended to prove were conclusively established.

9. PROPOSITION OF LAW—*on trial by the court—of its sufficiency to present the question.* In an action to recover damages for the non-delivery of bacon in Bremen, Germany, according to contract, the defendant asked the court trying the case without a jury, to hold that "the measure of damages in this case is to be determined at Chicago, Illinois, (place of making the sale,) and not at Bremen :" *Held,* that such request was properly refused, as the proposition furnished no information as to the view taken by the court concerning the rule of damages, and no question of law was thereby raised.

WRIT OF ERROR to the Appellate Court for the First District; —heard in that court on writ of error to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. BISBEE, AHRENS & DECKER, for the plaintiff in error:

The contract sued on is a parol contract, and the five years' limitation applies.

The writing appears on its face to be executory. *Smith* v. *Weaver,* 90 Ill. 392.

The whole agreement between the parties is not in the writing. The count in the declaration shows this. Not being signed by defendant in error, the implied promise to buy and pay according to the terms of the writing, can not be derived from the writing itself. *Butler* v. *Thomas,* 92 U. S. 412; Anson on Contracts, 27.

Executory contracts must bind all parties. If the writing does not show this, it is no contract. *Waggeman* v. *Bracken,* 52 Ill. 469; *Olney* v. *Howe,* 89 id. 560; *McKinley* v. *Watkins,* 13 id. 142; *Cook* v. *Oxley,* 3 T. Rep. 653; 1 Parsons on Contracts, (5th ed.) 449; *Derickson* v. *Krause,* 4 Bradw. 510.

The action is upon the contract between the parties, and not upon the promise of the plaintiff in error. Rev. Stat. secs. 15, 16, chap. 83.

Authorities on question of the admissibility of evidence to contradict writings: 2 Wharton on Evidence, secs. 920-923; Starkie on Evidence, 648; Benjamin on Sales, 202; *Thornton* v. *Kemster,* 5 Taunt. 788.

As to the nature of the writing, see *Railroad Co.* v. *Johnson,* 34 Ill. 389; *Dunning* v. *Price,* 56 id. 338; *Jassoy* v. *Horn,* 64 id. 379.

Wherever the writing has been considered the basis of the action, the consideration was an executed one, and so appears on the face of the writing. *Chapman* v. *Morrill,* 20 Cal. 120; *Wellington* v. *Railway Co.* 2 Texas App. 148; *Reyburn* v. *Casey,* 29 Mo. 129; *Moorman* v. *Sharp,* 35 id. 283; *Carr* v. *Thompson,* 67 id. 536.

In all cases where an executed consideration does not appear, and there is no mutuality on the face of the writing, the agreement has been held to be parol, notwithstanding the writing. *Chapman* v. *Morrill, supra; Manifer* v. *Arnold,* 51 Mo. 536; *Oversheimer* v. *Jones,* 66 Ind. 452; *Commissioners* v. *Shipley,* 77 id. 553; *High* v. *Commissioners,* 92 id. 580; *Hackleman* v. *Board,* 94 id. 36; *Tomlinson* v. *Briles,* 101 id. 538; *Lamb* v. *Withrow,* 31 Iowa, 164; *Baker* v. *Johnson,* 33 id. 151; *Kinsey* v. *Lamsa Co.* 37 id. 438; *Hulbert* v. *Allerton,* 59 id. 91; *Wilkinson* v. *Heaverisch,* 58 Mich. 574; *Goodspead* v. *Plow Co.* 45 id. 322; *McDonald* v. *Berwick,* 51 id. 79; *Grove* v. *Hodges,* 55 Pa. St. 504. *Prenette* v. *Runyan,* 12 Ind. 174, if not distinguishable, is in conflict with the subsequent decisions of Indiana.

The only authorities against the view, that where acceptance by parol or promise by parol must be proved the agreement becomes parol, are cases under the Statute of Frauds, or cases on evidence which are not strictly in point. The following cases are reviewed and distinguished as specimen cases: *Ford* v. *Yates*, 4 E. C. L. 738; *Harmon* v. *Groves*, 18 id. 667; *Manufacturing Co.* v. *Morse*, 48 Vt. 322; *Grove* v. *Hodges*, 55 Pa. St. 504.

Messrs. Smith & Pence, for the defendant in error:

The instrument sued upon is a contract in writing. It describes the parties,—the seller and the buyer,—expresses a mutual assent, sets out the agreement and the subject-matter of the sale, the price to be paid therefor, is signed by the seller, and is delivered to and accepted by the buyer. Benjamin on Sales, 1; *Butler* v. *Thompson*, 92 U. S. 412.

Being in writing, such contract can be barred only by the ten years' limitation, and not by the five years' limitation, as is insisted upon by counsel for appellant.

All the terms of the contract being expressed in the instrument, and it being signed by the seller and accepted by the buyer, constitutes it a written contract, without the written assent of the buyer. *Railroad Co.* v. *Johnson*, 34 Ill. 389; *Dunning* v. *Price*, 56 id. 338; *Prenatt* v. *Runyon*, 12 Ind. 179; *Ashley* v. *Vischer*, 24 Cal. 322; *Neighbors* v. *Simmons*, 2 Blackf. 75; *Reyburn* v. *Casey*, 29 Mo. 129; *Abrams* v. *Pomeroy*, 13 Ill. 133; *Farwell* v. *Lowther*, 18 id. 252; *McCormick* v. *Huse*, 66 id. 319; *Conwell* v. *Railroad Co.* 81 id. 232; *Hooker* v. *Hyde*, 61 Wis. 205; *Butler* v. *Thompson*, 92 U. S. 412; *Parton* v. *Crofts*, 16 C. B. (N. S.) 11; *Hawes* v. *Foster*, 1 Mood. & Rob. 368.

The written instrument is the evidence of the contract, and not the contract itself. 1 Chitty on Contracts, 5, 6, and notes; Anson on Contracts, *55.

The writing is not an offer, but it expresses all the terms of an already consummated agreement. The expression, "I agree to sell, or I have sold to A B," is not an offer to sell, but is the evidence of an agreement already made. *Ives* v. *Hazzard,* 4 R. I. 14; *Aiken* v. *Railroad Co.* 26 Barb. 289; *Barton* v. *McLean,* 5 Hill, 256; *Spalding* v. *Hollenbeck,* 30 Barb. 292; *Andrews* v. *Pontine,* 24 Wend. 289; *Davies* v. *Wilkinson,* 10 A. & E. 98; *Butler* v. *Thompson,* 92 U. S. 412.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a suit in assumpsit, brought in the Superior Court of Cook county January 14, 1887, by Hermann Niepert, doing business at Bremen, Germany, under the name of Schmidt & Fuhrken, against Henry Memory, of Chicago, Illinois, to recover damages for the non-delivery of the property described in the following instrument:

"BREMEN, *September 20, 1879.*
"*Messrs. Schmidt & Fuhrken, Present:*

"Mr. Henry Memory, in Chicago, has sold to you, through my care, 250 boxes of American bacon, long clear middles, at M. 25 for 110 lbs., Engl. cost and freight Bremen, against draft at 60 days' sight on your good selves, or against banker's reimbursement, in which case one-half per cent allowance to be returned to you; drafts to be accepted against delivery of documents. December or January, 1880, shipment from the west by railroad to New York or Baltimore, hence by direct steamer to Bremen.   Yours respectfully,

FRED EGGENA."

Said instrument was written in the German language, the foregoing being a translation. If said instrument is to be regarded as a consummated contract, as the plaintiff insists, it is, when construed in the light of the evidence, a contract of sale by the defendant to the plaintiff of two hundred and fifty boxes of American bacon, at twenty-five marks for one

hundred and ten English pounds, less freight and other charges to Bremen, a draft for the price to be drawn by the seller upon the purchaser, at sixty days' sight, and in case the purchaser obtained a banker's guaranty, he was to have returned to him one-half of one per cent of the amount, the shipment to be made in December or January next after the date of the contract. The defendant pleaded *non assumpsit,* and also a plea averring that the causes of action alleged in the declaration did not, nor did either of them, accrue to the plaintiff within five years next prior to the commencement of the suit. To the latter plea the plaintiff replied that the contract sued upon was in writing, and to that replication the defendant rejoined that said contract was not in writing. A trial being had before the court without a jury, the issues were found for the plaintiff and his damages were assessed at $4919.96, and for that sum and costs, the court, after denying the defendant's motion for a new trial, gave judgment in favor of the plaintiff. Said judgment was taken to the Appellate Court by writ of error and was there affirmed, and by writ of error to that court, the record is now brought here for review.

Said contract was negotiated and said writing was executed on behalf of the defendant by Ferdinand Eggena, who claimed to act as the defendant's agent. His authority so to act was contested at the trial, the evidence on that point being conflicting. Whether the trial court reached a correct solution of that controversy or not is a matter which is not open for discussion here. It is a mere question of fact as to which the judgment of the Appellate Court is conclusive, and therefore, for all the purposes of our decision, we must assume that said Eggena had in fact competent authority from the defendant to negotiate and conclude said contract.

The evidence tends to show that, at the date of said contract, the plaintiff offered to purchase of Eggena, as the defendant's agent, two hundred and fifty boxes of American bacon of the description and upon the terms set forth in said

writing, and that Eggena accepted said offer on behalf of the defendant, and as evidence of the contract thus formed, executed and delivered to the plaintiff said writing. No bacon was delivered by the defendant to the plaintiff in performance of said contract, but on the 4th day of December, 1879, and before performance was due, the defendant, having become embarrassed in his business affairs, wrote and sent a circular letter to his various customers, and among them to the plaintiff, explaining to them his circumstances and the causes which brought them about, and giving notice of his probable inability to fill his contracts unless there should be a great decline in prices, and saying to them: "Of course, after the time has elapsed for the goods to arrive, you must fill in your contracts and debit me with the loss, which in future I shall make every effort to settle, as I am determined not to suspend payment." The goods bargained for not arriving within the time stipulated, the plaintiff went upon the market at Bremen and bought for account of the plaintiff, the bacon necessary to fill said contract, the price having then advanced considerably above the contract price, and charged the loss to the defendant.

The principal contest at the trial was upon the defense set up by the plea of the Statute of Limitations. The defendant's position was, that the contract was an unwritten one, and therefore subject to the limitation of five years provided by section 15 of said statute, while the plaintiff insists that it was in writing, and therefore subject to the limitation of ten years provided by section 16. It can not be successfully contended, at least in this court, that there was not a contract of sale actually agreed upon and concluded between the parties. Said contract consisted of a proposition submitted by the plaintiff and accepted by the defendant through his agent. This the oral evidence tended to show, and we must presume, in affirmance of the judgment of the Appellate Court, that the fact which the evidence thus tended to prove was conclusively

established. It being then accepted as a fact that such oral contract was made, was it properly evidenced by writing?

"A written contract is one which, in all its terms, is in writing. A contract partly in writing and partly oral is, in legal effect, an oral contract." Bishop on Contracts, secs. 163, 164. In case of specialties the contract is said to be merged in the writing, but it has been held that "a written contract not under seal is not the contract itself, but only evidence, the record of the contract." *Wake* v. *Harrop*, 6 Hurl. & Norm. 768. But where parties have deliberately put their contract into writing, the rule doubtless is, that the writing is the exclusive evidence of what the contract is. *Kimball* v. *Custer*, 73 Ill. 389; *Merchants' Ins. Co.* v. *Morrison*, 62 id. 242; *Longfellow* v. *Moore*, 102 id. 289.

Looking to the writing then as the sole evidence of the contract, what do we find? The names of the contracting parties are given, with a proper description of the goods sold, the time and mode of delivery, the price and mode of payment, and all the terms which go to make up a completed contract of sale. But it is said that because it is signed by one party only, it lacks mutuality, that is, it fails to show that it received the assent of the party not signing it, and therefore is no evidence of any contract whatever. This view, in our opinion, is unsound. Regarding the writing as an instrument of evidence, and testing it by the rules applicable to that subject, it constituted a declaration or acknowledgment by the defendant, and of course binding upon him, that he had "sold" to the plaintiff the goods therein described upon the terms therein set forth. The word "sold" imports, not a mere proposition to sell but a consummated contract of sale. As said in *Parton* v. *Crofts*, 16 Com. Bench, N. S. 11, where the same word was used: "It is impossible that there can be a sale without a purchase; the relation of buyer and seller can only exist where there are two parties to the bargain." So in *Butler* v. *Thomson*, 92 U. S. 412, the court, in discussing the legal import of

the same word, use very much the same language, viz : "It seems clear that there can be no sale unless there is a purchase, as there can be no purchase unless there is a sale." The writing in this case is the acknowledgment of a contract in which there is complete mutuality—a buyer and a seller— a purchase and a sale. It is clear that the execution and delivery of such a writing by the seller to the buyer is not the submission of a mere proposition, but the execution of a contract capable of being enforced as such against him.

But it is objected that to show mutuality, so as to render the contract enforcible as a written contract, it must appear to be a contract which might have been enforced against the purchaser if the breach had been on his part. If this is to be adopted as a test, it does not seem to present any special difficulty. As we said in *Ames* v. *Moir*, 130 Ill. 582, where a similar contract was signed by the purchaser, and suit was brought against him by the sellers for the purchase money : "When the sellers accepted the paper as a contract, they became bound by its terms and conditions as completely as if they had in form signed the paper." In *Lowber* v. *Connit*, 36 Wis. 176, it is said : "The party who accepts and adopts a written contract, though not signed by him, should be deemed to have fully assented to its terms and conditions, and is therefore bound by them. He ought not to be in a position where he can hold the other party to the contract, and compel its performance, if advantageous to him, and at the same time be at liberty to avoid the contract on his part if disadvantageous. Both parties ought to be bound by the contract or neither should be bound. And where the contract has been accepted and adopted by the party not signing it, he does assent and agree to it on his part, and the law implies a promise to perform." See also *Hutchinson* v. *C. & N. W. Ry. Co.* 37 Wis. 582 ; *Finley* v. *Simpson*, 2 Zabris. 311, and authorities cited.

The delivery of a writing and its acceptance and adoption by the party to whom it is delivered, are necessarily facts

dehors the writing itself, and must therefore be proved by extrinsic evidence; and where mutuality is established by proof of the acceptance of the *writing*, the contract is, notwithstanding such resort to parol evidence, a contract all of which is in writing. Of course where the writing is on its face a mere offer or proposition, the acceptance of the paper does not necessarily bind the party accepting to its terms. There must in such case be some further act manifesting an acceptance of the proposition, and whether the contract, after acceptance, will be deemed to be a contract in writing, within the meaning of the fifteenth and sixteenth sections of the Statute of Limitations or not, must depend upon a variety of circumstances. The rules on this subject are laid down and fully discussed in the case of *Plumb* v. *Campbell,* 129 Ill. 101. But where the writing on its face purports to be a consummated contract, the mere acceptance and adoption of the writing establishes mutuality, and makes the contract binding on both parties. This would manifestly be the case if the instrument were a promissory note, a bond, a deed, or any other instrument purporting to be a completed contract, or importing mutual obligations. The instrument sued on in this case obviously belongs to this class. It is a contract of sale, containing mutual obligations, viz., on the part of the seller to deliver and on the part of the buyer to receive the goods sold and pay the price. It is therefore a contract in writing, binding on both parties, and containing within itself all the elements of mutuality. It follows that it was subject to the limitation of ten years, and as that period had not elapsed at the time the suit was brought, it is not barred.

But it is urged that the contract can not be enforced because it is incomplete, such incompleteness consisting, as the defendant's counsel construe the instrument, in the reservation to the purchaser of the right to choose whether the seller should draw on him directly, or on some banker to be provided, in which latter case he was to be allowed a rebate of

one half per cent. It is claimed that this was one of the essential provisions of the contract, and that as it was left undetermined, there was no such meeting of the minds of the parties as would ripen the negotiation into a completed contract.

It must be confessed that there is some obscurity in the phraseology of that part of the contract which relates to the mode of payment, such obscurity very likely arising from the difficulty in translating the business terms employed in the German language into precisely equivalent English. The translation given above is the one appended to the plaintiff's declaration as a copy of the contract sued on. The plaintiff appended to his deposition taken in the case another translation which, in the particular under consideration, varies somewhat from the one above given. That translation, *omitting date, address and signature*, is as follows:

"Mr. Henry Memory, of Chicago, sold you to-day, by my medium, 250 cases of American bacon, long clear middles, at 23 mark per 110 pounds Engl., cost and freight Bremen, time 60 days' sight, or banker's reimbursement, in which case one-half per cent is to be allowed again to you. Acceptance upon delivery of the documents. Shipment December, a. c. Jan. 1880, from the West by rail, via New York or Baltimore, by direct steamer to Bremen."

What is meant by "banker's reimbursement" is not clear, as that is not a term usually employed in business affairs with which we are familiar, but we suppose it to mean, a banker's guaranty, or more probably, a banker's discount of the draft which should be drawn by the seller upon the buyer for the price of the goods sold. As we read the contract then, it provided for payment by the seller's draft on the buyer at sixty days' sight, but in case the buyer should procure a bank to guarantee the draft, or perhaps to cash it, one-half of one per cent should be returned to the buyer. But whatever may be the nature of the option reserved by the contract to the

buyer, the contract itself was complete. The reservation of the option was merely as to the mode of payment, and its exercise pertained to the performance rather than to the formation of the contract. If the buyer had reserved to himself the option to pay for the goods by cash on delivery, or by his note due sixty days after date, or in any other specified mode, the reservation of such option would not have constituted an incompleteness in the contract itself. The buyer would not have been called upon to exercise the option until it became incumbent upon him to perform the contract on his part, and the exercise of the option would only be a part of such performance.

Complaint is made that the damages awarded the plaintiff are excessive, and that the court adopted and applied an erroneous rule of damages. The first of these questions is a pure question of fact, which can be determined only upon an investigation and consideration of all the evidence in the case. That this court can not do, but must adopt the conclusions of the Appellate Court as final.

The rule of damages adopted by the trial court would undoubtedly be open for review here if the record furnished us proper information as to what rule was adopted by that court. The contention is that the damages should have been assessed upon the basis of the prices of bacon in the Chicago market rather than in the market at Bremen. The record, however, furnishes us with no evidence as to which rule was adopted. The trial was before the court without a jury, and several propositions were submitted to be held as the law in the decision of the case. Of these only one had any possible bearing upon the point now under discussion, and that was the fifth, which was refused, and was as follows: "The measure of damages in this case is to be determined at Chicago, Illinois, and not at Bremen."

The insufficiency of this proposition as a statement of the rule of law contended for is too apparent to require discus-

·sion. It is far from being a statement that the measure of damages in this case should be based upon the prices of bacon in the Chicago market at the time the delivery of the bacon in question was due, and not upon the price of it in the market .at Bremen. The trial judge was justified in refusing, and it ˙must be presumed that he did refuse, said proposition, on the ground that it did not state the rule of law contended for, or any other rule of law applicable to the case, and the refusal ·of it therefore furnishes us with no information as to what view of the question the trial judge took, nor as to what rule he actually applied. The attempt to raise said question as a question of law was ineffectual. The case, so far as the rule ·of damages is concerned, is in the same plight as though no propositions of law had been submitted, and, as we have uniformly held, where a trial is had before the court without a jury, and no propositions are submitted to be held as the law in the decision of the case, no question pertaining to the decision of the court passing upon the issues or assessing damages can ordinarily be so preserved in the record as to be open for review in this court.

So far as we are able to see there is no error in the record, ·and the judgment of the Appellate Court will accordingly be affirmed. *

*Judgment affirmed.*

---

\* HENRY MEMORY 			Error to the Appellate Court for
			*v.* 			the First District.
·JULIUS THEODORE FRITZE *et al.*

Mr. JUSTICE BAILEY—(after stating the recovery of judgment by the ־plaintiffs in the trial court, and the affirmance of that judgment by the Appellate Court):

The evidence heard at the trial was in all material respects the same .as that presented in *Memory* v. *Niepert*, except that it applied to the ·contracts sued on in this case instead of that, and the same propositions were submitted to be held as the law in the decision of the case .and were disposed of the same way as in *Memory* v. *Niepert*. The questions therefore presented by this record seem to be identical in all respects with those discussed and decided in that case, and upon the principles laid down in the opinion there filed, the judgment in this case will be affirmed.

*Judgment affirmed.*