Betty Jeanne STEARNS and Howard
Lavelle Sutton, Plaintiffs,

v.

The HERTZ CORPORATION, a corporation, Defendant.

No. 60 C 404(1).

United States District Court
E. D. Missouri, E. D.

July 12, 1962.

Roberts P. Elam, St. Louis, Mo., for plaintiffs.

Crowe, Shanahan, Schneider & Lebowitz, St. Louis, Mo., for defendant.

HARPER, Chief Judge.

This is a diversity action brought by Betty Jeanne Stearns, a citizen and resident of Missouri, and Howard Lavelle Sutton, a citizen and resident of Illinois, against The Hertz Corporation, hereinafter referred to as Hertz, a Delaware corporation, which does not have its principal place of business in Missouri. Since the amount in controversy exceeds $10,000, exclusive of interest and costs, this court has jurisdiction under Title 28 U.S.C.A. § 1332.

The case was heard before this court without a jury. It was agreed by the parties that the law of Illinois is the applicable law in this case.

The testimony discloses that on January 4, 1956, the plaintiffs were working in Chicago as a dance team. Plaintiff Stearns received word that her mother was seriously ill in St. Louis, Missouri, and she was very desirous of reaching St. Louis at the earliest possible time. There were no adequate plane or train accommodations available for several hours, and it was decided by the plaintiffs that a car would be rented and the plaintiff Sutton would drive both of them to St. Louis. Sutton had previously seen advertising of the defendant which was engaged throughout the country in the car rental business. He knew that the defendant had a car rental agency near the hotel where the plaintiffs were staying. These factors entered into Sutton's decision to rent the car from the defendant. At defendant's car rental agency Sutton dealt with Martin F. Benson and informed him of his intended use of the car.

On direct examination Sutton testified that he asked Benson if it were necessary to take out additional insurance, and was advised by Benson that it was not necessary, as Hertz furnished $25,000/$50,000 liability coverage, $5,000 property damage and $100 deductible collision coverage. The more credible testimony, however, with respect to what occurred at the defendant's office was the testimony of Sutton on cross-examination, at which time he testified that when he went to the car rental agency office he was in a hurry; that he didn't question Benson about insurance, but was told by Benson that $25,000/$50,000 liability coverage, $5,000 property damage and $100 deductible collision coverage was provided, as well as fire and theft; and that he did not inquire about the details of the insurance nor was it discussed and that he assumed he was completely covered.

Sutton drove back to the hotel and picked up plaintiff Stearns. They thereafter proceeded to St. Louis. Somewhere near Lincoln, Illinois, the car left the road, upset and turned over, seriously injuring plaintiff Stearns. Sutton, a few days later, notified Hertz of these occurrences. Thereafter, Hertz sent Sutton a green copy of the rental agreement, to which was attached a statement that the accident claim was being duly processed.

Plaintiff Stearns brought suit against Sutton in March of 1956 for the injuries sustained. Upon being served with summons, Sutton forwarded the same to Hertz. He received a letter from Continental Casualty Company advising him that its policy with Hertz excluded coverage for passengers in the car. Sutton answered this letter by stating that he considered himself entitled to insurance coverage from Continental and Hertz, and intended to hold them responsible for such coverage.

Plaintiff Sutton employed counsel, who defended the suit, after calling upon Hertz and Continental for assistance. Plaintiff Stearns obtained judgment against Sutton in the amount of $18,000 and $30.35 court costs.

At the time he rented the car Sutton did not read the rental agreement when he signed it, nor did he remember if he received a copy. The agreement provided for exclusion of passengers from the insurance provided. Among the advertis-

ing of Hertz, with which Sutton was familiar, was an ad which stated:

"Low Hertz rates include all gasoline, oil and *proper insurance* * *. Public Liability, Property Damage, Fire and Theft Insurance, $100.00 deductible collision protection * * at no extra charge." (Emphasis added.)

This advertisement appeared throughout the country.

Chapter 95½, S-H Ill.Rev.Statutes, Section 63, makes unlawful the car rental business unless there is in effect:

(1) A motor vehicle liability policy * * * providing that the insurance carrier will pay any judgment within thirty days after it becomes final, recovered against the customer * * * for damage to property other than to the rented motor vehicles, or for an injury to, or for the death of *any person, not an occupant* of the rented motor vehicle, resulting from the operation of the motor vehicle, provided, however, every such policy provides insurance insuring the operator of the rented motor vehicle against liability imposed by law upon such insured for bodily injury to, or death of *any person* or damage to property to the amounts or limits as provided under Section 42–11 of this Act.

(or)

(2) A motor vehicle liability bond, conditioned that the owner of motor vehicle will pay any judgment within 30 days after it becomes final, recovered against the customer * * for damage to property other than to the rented motor vehicle, or for an injury to, or for the death of any person *not an occupant of the rented motor vehicle*, resulting from the operation of the motor vehicle, provided, however, every such bond is in the penal sum of eleven thousand dollars ($11,000) and is conditioned for payment in amounts as would be required in a motor vehicle lia-

bility policy as provided in Section 42–11 of this Act * * *." (Emphasis added.)

A casual reading of these sections would indicate that defendant Hertz need only provide insurance covering persons "not an occupant of the rented motor vehicle." See Gabler v. Continental Casualty Company, 295 S.W.2d 194, Mo.App. However, plaintiff seizes upon the proviso in subsection (1) which states: "Provided, however, every such policy provides insurance insuring the operator of the rented motor vehicle against liability imposed by law upon such insured for bodily injury to, or death of *any person* or damage to property * * *." Because the Illinois legislature omitted the phrase "not an occupant of the rented motor vehicle," plaintiffs contend that it intended to require coverage of any person.

Plaintiffs argue that that subsection (1) deals only with satisfaction of judgments, while the proviso deals with insurance. Therefore, the proviso is not inconsistent with the rest of the section. While plaintiffs' contention is literally true, such a construction would lead to absurd results. First, such a construction would require this court to find that the legislature intended the proviso to enlarge the coverage of the rest of the subsection, although provisos generally except something from the enacting clause. 82 C.J.S. Statutes § 381, p. 883; Anderson v. City of Park Ridge, 396 Ill. 235, 72 N.E.2d 210, 218. Secondly, it would require this court to find that the legislature intended the insuror to satisfy all judgments within thirty days, except those involving an injury to a passenger. There is no logical basis for this contention. Third, subsection (2) which allows the defendant to furnish a bond instead of insurance, clearly provides that the bond be conditioned to pay judgments to persons "not an occupant of the rented motor vehicle." Thus, plaintiffs' construction would require this court to find that the legislature intended to require broader cover-

age when insurance was procured, than when a bond was posted.

Thus it appears that the Illinois legislature did not by the proviso enlarge the statute, but, rather, unintentionally omitted the phrase "not an occupant of the rented motor vehicle" from the proviso. Therefore, defendant has fully complied with the Illinois statute.

Plaintiffs further contend that Benson's statement that Hertz furnished $25,000/$50,000 liability coverage and $5,000 property damage created an obligation to furnish coverage in this amount for injuries to any person. However, this oral statement, even if it could be construed as suggested by plaintiffs, could not be used to vary the terms of the written rental agreement, which unequivocally excludes coverage for passengers.

The Illinois Supreme Court in Davis, et al. v. Fidelity Fire Ins. Co. of Baltimore et al., 208 Ill. 375, 70 N.E. 359, had this to say, l. c. 362:

"The law is well settled that, when parties reduce to writing their agreement as finally agreed upon by them, all prior negotiations leading up to the execution of the writing are merged in the writing, and that parol evidence is not admissible to explain, contradict, enlarge or modify the writing as it exists when executed. The writing, when executed becomes the repository of the agreement between the parties. In Memory v. Niepert, 131 Ill. 623, 23 N.E. 431, on page 630, 131 Ill., and page 432, 23 N.E., it is said: 'Where parties have deliberately put their contract into writing, the rule doubtless is that the writing is the exclusive evidence of what the contract is.' And in Clark v. Mallory [citation] 185 Ill. 227, 56 N.E. 1099 (page 232, 185 Ill., and page 1100, 56 N.E.): 'While courts will uniformly endeavor to ascertain the intention of the parties in construing a contract between them, and for that purpose will look into the surrounding circumstances at the time the contract was executed if the language of the instrument is ambiguous or its meaning uncertain, still, when the language employed is unequivocal, although the parties may have failed to express their real intention, there being no room for construction, the legal effect of the instrument will be enforced as written. Intention of the parties is not to be determined from previous understandings or agreements, but must be ascertained from the instrument itself which they execute as their final agreement, otherwise written evidence of an agreement would amount to nothing.' "

This decision has been cited many times since by the Illinois courts and other courts, one of the more recent citations being Lockwood v. Goldman, 345 Ill.App. 324, 102 N.E. 828.

There are some exceptions to the above rule, the general exception being one of fraud, but there is nothing in the testimony in this case in any way that would make the contract an exception to this general rule.

Plaintiffs also contend that Hertz' advertising binds it to furnish "proper insurance." However, under the circumstances, "proper insurance" cannot be construed to include coverage other than required by Illinois law, and the insurance provided complied with the Illinois law.

Plaintiffs' final contention is that because of the extreme difference in bargaining position between Hertz and Sutton, this court should find that the clause excluding coverage to occupants of the car violates the public policy of Illinois. In support of this proposition plaintiffs cite Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R. 2d 1. However, the Henningsen case, and other similar cases have validity only where because of a stronger bargaining position a party is able to frustrate a clearly defined public policy. For example, in the Henningsen case the parties contracted away statutory implied war-

**510**

ranties. However, it has been shown that there is no clearly defined public policy requiring coverage of passengers of an automobile. Quite to the contrary, as previously stated, it is clear that Illinois intended not to require this coverage. The Henningsen rationale cannot be used by this court for the purpose of rewriting the contract of the parties.

The court will accordingly find in favor of the defendant in this case.

This memorandum opinion will be adopted by the court as its findings of fact and conclusions of law, and the clerk will prepare the proper order to be entered by the court.