## Daniel M. Miers, Appellee, v. Charles H. Fuller Company, Appellant.

### Gen. No. 15,987.

1. CONTRACTS—*advertising, construed. Held,* that the particular contract in question in this case did not require the particular advertising matter in question to be printed alongside of unpaid reading matter etc., that there was a blank space in the contract in which to designate the position of the advertisement and that in the absence of desig-

nation there was no obligation on the part of the publisher to print such advertising matter in any particular place.

2. CONTRACTS—*defense available against assignee.* Contracts which are not negotiable instruments are subject to the same defense in the hands of assignees as they would be in the hands of the original holders.

3. CONTRACTS—*when not lacking in mutuality. Held,* under the facts of this case, that the particular contractual obligation was not subject to the contention that it was unilateral in character.

4. CONTRACTS—*effect of acceptance of written proposition.* Where a party accepts and adopts a written contract, even though not signed by him, he shall be deemed to have assented to its terms and conditions and to be bound by them.

5. CONTRACTS—*when letter in part fixing relations of parties need not be supported by consideration.* If a letter is to be construed as part of a written contract and not as representing a separate transaction it is germane to the original contract and the same consideration which supports the written contract likewise supports the letter.

6. INSTRUCTIONS—*when upon preponderance of evidence not erroneous.* An instruction upon this subject which enumerates a number of matters that the jury may consider in determining upon which side lies the preponderance of evidence, is not erroneous if it likewise contains a conclusion as follows: "and from all these facts as shown by the evidence and from all the facts and circumstances so shown, the jury must decide on which side is the preponderance."

7. PLEADING—*what competent under general issue.* Recoupment is proper under the general issue, or under the general issue with notice.

8. PARTIES—*who appropriate defendant in action upon contract.* A person signing a contract in his own name without limitation and who pays the consideration therefor is a proper defendant in an action brought on such contract.

9. ASSIGNMENTS—*who cannot question.* In an action upon a contract which has been assigned to the plaintiff the defendant is not entitled to question the matter of the assignment if such defendant has been allowed to interpose its defense precisely as though the action had been instituted by the original holder of the contract.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed November 15, 1911. Rehearing denied January 18, 1912.

**Statement by the Court.** This is a suit in assumpsit by Daniel M. Miers against the Charles H. Fuller Company on a written contract. Judgment was rendered

for Miers and against the Company, a corporation, for $2,800, and the latter has appealed.

Appellee sued as the assignee of the Selah-Patterson Company and the Weekly Supplement Company, New York corporations. At the time the said contract was made the Selah-Patterson Company was engaged in publishing the "Selah-Patterson Pictorial and Colored Supplement," an insert or booklet printed in New York, forwarded and sold by it to about one thousand different country newspapers throughout the United States as an advertising medium. The country newspapers would, in turn, insert this colored supplement in their Sunday editions, and thus distribute it to a large number of subscribers, aggregating about 750,000. The Selah-Patterson Company solicited advertising and sold space in this colored supplement. December 10, 1906, appellant, advertising agent or broker of a magazine entitled "Cheerful Moments," wrote an order directing the publishers of the Colored Supplement to insert an advertisement one-quarter page in colors, in three editions of said supplement, at the rate of $1,275 per issue, beginning at once. Appellant charged its clients, the magazine people, $1,500 for each insertion of the advertisement, and was paid by them $4,500 in full for the three insertions. About the time this contract was made the Selah-Patterson Company assigned all its property, good will and accounts and contracts to the Weekly Supplement Company. About January 8, 1907, the Weekly Supplement Company assigned this account sued on to appellee, after it had assumed said contract and had published the said advertisement in three numbers or editions of said colored supplement, to wit, in numbers 15, 16 and 17 thereof. Appellant has paid for one advertisement or insertion, No. 15, after it was gotten out and distributed. The other issues,

52      APPELLATE COURTS OF ILLINOIS.

Miers v. Chas. H. Fuller Co., 167 Ill. App. 49.

Nos. 16 and 17, have not been paid for by appellant or by any one else.

ARTHUR W. UNDERWOOD and MARVIN E. BARNHART, for appellant.

CHARLES S. GRAVES, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The first contention made by appellant for reversal of the judgment is that appellee did not show compliance with the terms of the contract by the Weekly Supplement Company. The order for printing in this case was addressed to the publishers of said supplement in substantially this language:

"Please insert inclosed advertisement of Cheerful Moments three times in your weekly, all editions commencing at once, in space of one-quarter page in colors. Charge us net rate $1,275 per time. Extra space, pro rata, * * * * and we reserve the right of discontinuing or canceling this contract by paying for space used, according to the schedule of rates under which this contract was made. * * * Send your publication regularly to our address, and copy containing each insertion to advertiser."

Mr. Winslow, President of the Weekly Supplement Company, testified that the advertisement in question was printed in numbers 15, 16 and 17 of the Weekly mentioned in the contract, those being the three numbers printed just after the date of the contract; that the advertisement covered a quarter page and was printed in colors; that they were shipped by the Weekly Supplement Company to the country newspapers for whom they were prepared and that they sent them out with their weekly editions; and copies were returned by these various papers showing that they had printed and circulated them; that numbers 15 and 16

went out between December 22nd and December 26th, 1906, and No. 17 went out between the 1st and 10th of January, 1907. It is also proved by the record that copies of each edition containing the advertisement were delivered to Charles B. Adams, advertising manager of "Cheerful Moments." We think the proof was ample to show compliance with the written terms of the contract above set forth, except as to the matter of the requirement of mailing a copy of the publications to appellant. It will not be necessary for us to pass upon the question of whether or not appellant has waived its right to raise the question of the sufficiency of the proof of performance of the contract, because not raised in the court below, as contended by appellee, as the cause must be retried. As we read the contract, there is no requirement therein requiring the advertisement to be printed alongside of unpaid reading matter, etc. There was a blank space in the contract in which to designate the position of the advertisement in the supplement; but as appellant failed to indicate in the space or elsewhere any position for the advertisement, the contract cannot be held to bind appellee or his assignors to print its advertisement in any particular position in the supplement.

As to the defense of fraud raised in this case, it appears that all of appellant's evidence was admitted on that question, and that it raises no objections to the instructions given or refused by the court and bearing on that question. It appears to be simply a question of fact to be determined by the jury, and as the cause is to be remanded for another trial, it would not be proper for us to discuss any of the evidence on the merits.

Appellant also complains of the giving of four of appellee's instructions Nos. 8, 9, 10 and 12, and insists that they do not state legal principles that are applicable to this case. In this contention, we think that

54     Appellate Courts of Illinois.

Miers v. Chas. H. Fuller Co., 167 Ill. App. 49.

appellant should be sustained. It appears from the uncontroverted evidence in this case, as testified to by Mr. Charles B. Adams, advertising manager of "Cheerful Moments," that the contract, or order for the printing in this case, was secured for the Weekly Supplement Company by Mr. Fletcher and Mr. Selah, who solicited the order of Mr. Adams; that Fletcher told Adams that he was solicitor for advertising for the Weekly Supplement Company and introduced Mr. Selah to Adams as the Secretary of the Supplement Company; that in the presence of Mr. Fletcher and Mr. Lovell, treasurer of said Company, Mr. Selah, secretary of the Company, promised Adams that, if the Cheerful Moments people would insert the advertisement in the Weekly Supplement at the terms of $1,500 an issue for the three issues, that he would guarantee the Cheerful Moments people against loss, and would repeat the advertisement until they received $4,500 in returns from the advertisement in the way of subscriptions. Mr. Adams agreed to make the advertisement on those terms, and obtained Selah's promise that this guaranty would be put in writing and signed by some proper officer of the Weekly Supplement Company, and delivered to the owners of Cheerful Moments. With this understanding Mr. Adams wrote out an order for this advertisement and gave it to Mr. Fletcher to take it to the agent of the Cheerful Moments people, Charles H. Fuller Company, who then placed the order in suit with the Supplement Company. Mr. Lovell afterwards went to the office of the Cheerful Moments Company, and delivered to that Company a letter or contract in writing purporting to be the one promised to Mr. Adams by Mr. Selah, which letter was written on a letterhead of the Weekly Supplement Company, and in the words and figures as follows:

"December 31, 1906.
*Publisher Cheerful Moments—*

Dear Sir: Our understanding of the advertisement you have given us through the Charles H. Fuller Advertising Agency, amounting to $1,500 an issue, for three insertions, $4,500 in all, to be paid to us by said agency as due each month, is that if you do not receive $4,500 or more in returns from the said advertisements, we will repeat the same, without cost, using another puzzle, until you have received the above amount.

Yours very truly,
WEEKLY SUPPLEMENT COMPANY,
Frank A. Selah,
Secretary."

The original order for printing discloses on its face, as does the foregoing letter, that Charles H. Fuller Company, appellant, was really only acting as an agent of the Cheerful Moments Company in signing the order herein sued on and designated as the "contract." If the foregoing letter, addressed to Publisher of Cheerful Moments, was really authorized by the Weekly Supplement Company, it must necessarily be regarded as a part of the original contract sued on in this case. While it is true that all conversations prior to a contract and leading up to the same must be considered as merged in the terms of the written contract and not admissible in evidence to vary the terms thereof; yet, it is always permissible for parties to correct their written contract by another writing, when it does not correctly state the actual terms of the contract. When they do correct them in writing, or rewrite them for the purpose of expressing them more fully and correctly, the parties are just as much bound by such further stipulations and corrections as if a court of equity at the suit of one of the contracting parties had by its decree corrected the contract by inserting the stipulated matters, on the grounds of mutual mistake or

some other recognized equitable grounds. This letter does not purport to make any new contract, but simply to state in writing, at the request of Mr. Adams, what was really a part of the original contract. The evidence makes it clear that this statement or letter was intended to bind the Weekly Supplement Company. The only real question about the letter being a part of the contract is as to whether or not it was authorized to be written and delivered by the Weekly Supplement Company. It was written before the assignment to appellee, and binds him as well as his assignors, as the contract is not a negotiable instrument in the sense that the legal title passed to appellee free of defenses against the assignors. The doctrine of unilateral contracts, want of mutuality, etc., that is, that the letter was invalid because only signed by the Weekly Supplement Company, was not applicable in this case. The court in instructions numbered 8 and 9 for appellee told the jury, in substance, that if they found from the evidence that the letter was only signed by one party and not by the other, that the contract or letter would be void for want of mutuality, as one party could not be bound thereby unless the other was also bound thereby. If those instructions are correct propositions of law, then how is appellant bound by the original order which is only signed by appellant? The law is that where a party accepts and adopts a written contract, even though not signed by him, he shall be deemed to have assented to its terms and conditions and to be bound by them. Memory v. Niepert, 131 Ill. 623; Ames v. Moir, 130 Ill. 582; Forthman v. Deters, 206 Ill. 159.

Instructions Nos. 9, 10 and 12 were also erroneous, because they, in substance, informed the jury that there should be a new and valid consideration passing between the parties for the delivery of said letter, or it would be invalid and not binding. They also stated

that a gratuitous promise was not a sufficient consideration. These instructions were misleading, and should not have been given to the jury. They treated the letter and the original order as distinct and separate contracts, while in fact, if authorized, the letter was part of the original contract and well supported by the original considerations.

We find no error in the giving of appellee's instruction No. 2. It is not subject to the objections raised to it. It does enumerate a number of matters that the jury may consider in determining upon which side is the preponderance of the evidence on any proposition. But it does not require the jury to determine from them alone on which side the preponderance is, which is the usual vice that makes this instruction bad. It concludes thus, "and from all these facts as shown by the evidence and from all the facts and circumstances so shown" (i. e., shown by the evidence), "the jury must decide on which side is the preponderance." C. U. T. Co. v. Hampe, 228 Ill. 346; E. J. & E. Ry. Co. v. Lawlor, 229 Ill. 621.

There was considerable evidence tending to show that Fletcher and Selah were authorized to make this contract, and that they did make it on behalf of the Weekly Supplement Company. They had with them, when the contract was made with Adams, the original necklace puzzle by Sam Loyd, which was to form the principal feature in this advertisement, and also the list of country newspapers to whom it was to be sent. The terms for prizes to those who should solve them were changed by Selah and Adams, and made to read differently so they would not be in conflict with postal regulations, and were finally printed by the Weekly Supplement Company just as they had prepared them. Appellee sought to make the defense that neither Selah nor Fletcher was authorized to make this contract, and that they had no power or authority to do so by virtue

of any office or employment that they had with the Weekly Supplement Company. This question should have been properly submitted to the jury by instructions clearly stating the law applicable thereto. If the letter was authorized by the Weekly Supplement Company, it furnished a defense to a portion of all of appellee's claim in the nature of a breach of warranty, as the Weekly Supplement Company had ceased to publish the pictorial supplement, and had thereby put it out of its power to comply with the agreement to continue repeating the advertisement until the Cheerful Moments Company had realized $4,500, etc. This was matter of recoupment, and appellant was entitled to make the defense under the general issue, or the general issue with notice. Hutt v. Bruckman, 55 Ill. 441; Tully v. Excelsior I. Works, 115 Ill. 544.

There are a number of other questions raised by appellant upon this record that in our judgment are untenable, and do not require discussion. Appellant was paid the money for this advertisement, signed the contract in its own name without limitation, and was, therefore, properly sued in its own name by appellee. Whether or not there was a consideration for the assignment to appellee by the assignors is no matter of defense in this case. Appellant was allowed to make the same defense against appellee as if his assignors had sued, and, therefore, he had no cause of complaint. If the assignment was a pure gift to appellee, his assignors had a right to make the gift, provided they in no way interfered with any legal defense against the assignors that appellant had before assignment. Appellee was also entitled to legal interest from the date the issues were published.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*