Marcia Herzon, Appellant, v. Alexander Eisenstein, Appellee.

Gen. No. 39,695.

Opinion filed March 16, 1938.

Aaron Soble, of Chicago, for appellant; Max Chill, of Chicago, of counsel.

Harold L. Eisenstein, of Chicago, for appellee; Gustav E. Beerly and John F. Diffenderffer, Jr., both of Chicago, of counsel.

Mr. Presiding Justice Hebel delivered the opinion of the court.

The appeal by the plaintiff in this case is from a judgment entered in the municipal court of Chicago finding the issues against the plaintiff and for the defendant, and that the defendant have and recover from the plaintiff his costs, and that execution issue therefor.

The pleading upon which this judgment is based was a statement of claim filed on October 22, 1936, against the defendant Alexander Eisenstein, which alleged among other things the following:

That Marcia Herzon was the legal holder of Bond No. 518 in the principal amount of $500 and Bond No. 869 in the principal amount of $1,000. Each of the bonds was executed and delivered by the Devonshire Building Corporation, a corporation of Illinois, and both bonds matured on February 1, 1934. Interest coupons on each of the bonds become due on August 1, 1932, and subsequent thereto and up to the present time had not been paid. There was due as interest the sum of $472.50, which respective amounts of money the maker of said bonds failed and refused to pay, although often requested to make payment.

It is further alleged that the defendant, Alexander Eisenstein, executed a guaranty in writing, a copy of which was attached to the pleadings, whereby Alexander Eisenstein guaranteed the prompt payment of the bonds, and in signing the guaranty waived present-

ment for payment, notice of nonpayment, or dishonor, diligence in collection and all formalities required to charge him with liability. He further agreed that his liability as guarantor shall not in any way be impaired or affected by any renewal or extension which may be made with or without his knowledge or consent at the time of payment of all or of any of said bonds and interest coupons, or by any forbearance or delay in enforcing payment thereof and in enforcing the lien of the trust deed securing the same. The guaranty attached to the pleadings is in part as follows:

"Anything herein to the contrary notwithstanding, the liability of said parties of the first part hereunder shall extend and apply only to such interest on and principal of said bonds as fall due, or are declared due in accordance with the provisions of said bonds and/or deed of trust, prior to the completion of the apartment building, the construction of which is provided for in Section 2 of Article 1 of said deed of trust. Said building shall not be deemed completed, within the meaning of this paragraph, unless and until there shall be delivered to said Greenebaum Sons Investment Company a certificate signed by Alfred S. Alschuler, Architect, of Chicago, Illinois (or in the event of his death, absence from Chicago, Illinois, or other inability to act, then signed by R. N. Friedman, office associate of said Alschuler) certifying that said building has, in his judgment, which shall be final, been fully completed.''

This guaranty contract was entered into on the 10th day of January, 1924, between Alexander Eisenstein and Samuel Isenstein, parties of the first part, and Greenebaum Sons Investment Company, a corporation, party of the second part. The contract provided that the Devonshire Building Corporation, a corporation organized under the laws of the State of Illinois, to evidence its indebtedness in the sum of $575,000 for

a loan to be made to it by Greenebaum Sons Investment Company, was to execute 930 bonds, all bearing even date with the contract, and being in the aggregate for the principal sum of $575,000, and to bear interest at the rate of six and one-half per cent (6½%) per annum from and after February 1, 1924. The contract further provided that in consideration of the making of the loan by Greenebaum Sons Investment Company, and the acceptance by Greenebaum Sons Investment Company, for investment or for resale, the parties of the first part jointly and severally guaranteed the prompt payment of said temporary bond and each and all of said definitive bonds and interest thereon, when due and at all times thereafter, as provided by that part of the contract upon which this action is based.

The cause was tried upon the pleadings and the amended affidavit of merits of the defendant. No question is raised as to the sufficiency of the complaint. The amended affidavit of merits is a general denial of the several allegations contained in the bill of complaint, except as to the execution of the guaranty, the subject of this litigation.

Upon the hearing of the cause before the court the plaintiff introduced in evidence the bonds heretofore described, also the interest coupons, and computed the amount due as $2,145; also introduced in evidence defendant's answer to an interrogatory propounded by the plaintiff in which he admitted the execution of the original guaranty sued on in this cause.

There is evidence which was received by the court that Greenebaum Sons Investment Company had a staff of engineers who inspected buildings during construction to see that they were being built according to plans and specifications. Based upon such inspection, the company paid out funds from the proceeds of the loan to contractors and subcontractors on the order of

the architects. There is evidence that from these inspections the building was constructed in accordance with the plans and specifications as prepared by the architects for the building and the issuance by the architects of the final certificate, and that the building was completed approximately in the latter part of 1924.

· It further appears from the evidence that two guaranties were given at the same time, one by the defendant to pay all bonds and coupons that matured up to the time the building was completed in October, 1924, and one by Dr. William W. Tarr, on all bonds and coupons which matured thereafter. It does not appear from any evidence introduced that the architect's certificate provided for in the guaranty of the bonds in question was issued by Alfred S. Alschuler, although a charge of $550 was made for such certificate, but it does appear that the building was tenanted in September or October, 1924.

From the evidence before the court, it is apparent that the issue presented was whether the delivery of a certificate of completion signed by Alfred S. Alschuler, architect, or by R. N. Friedman, his office associate, in the absence or death of Alschuler, was necessary under the terms of the guaranty in order to release the guarantor from the obligation under the guaranty signed by him.

The plaintiff contends that the guarantor is liable in a suit at law on the guaranty executed simultaneously with the trust deed and the bonds secured thereby, and that a guaranty having been signed between the house of issue and the guarantor for the benefit of purchasers of the bonds, for which the loan was made, such bondholder has a right to maintain an action at law upon the guaranty.

The defendant answers that the completion clause or provision contained in the guaranty in question is for the benefit of the building owner or the mortgagee, depending upon the position of the contracting parties, and never for the benefit of the contractor or the guarantor. Therefore, such clause or provision can be waived by the conduct, actions and circumstances of the owner or mortgagee; that this is generally the case where all parties are satisfied that all of the terms and provisions of the agreements have been carried out and fully performed, nothing remaining to be performed but to procure a certificate; that the fact the owner of the building, Dr. W. W. Tarr, accepted it as completed and Greenebaum Sons Investment Company, by its conduct and actions waived the requirements of the certificate, discharged the liability of the defendant on the guaranty, and points to the fact that the evidence indicates the building had been examined by the inspector employed by Greenebaum Sons Investment Company, and occupied by tenants in September, 1924, and cites the case of *Walsh v. North American Cold Storage Co.,* 260 Ill. 322, wherein the question arose of the necessity of obtaining an architect's certificate when the work had been fully performed and accepted. The court said:

''Plaintiff in error further contends that the bridge company did not obtain a final certificate from the architect accepting the work, and insists that no recovery can be had of the balance due until such certificate is obtained. . . . Under the terms of the contract the issuance of the final certificate was necessary unless facts were proven which show a waiver of performance in that respect or that it was fraudulently refused by the architect. . . .''

Counsel for the plaintiff answers that there are two distinct elements to consider: (1) the physical fact

that the building has been completed and is inhabited and (2) that the guaranty ceases only on the completion of the building and the definition of completion is given and provided for by the very terms of the guaranty itself. It is immaterial for whose benefit a certificate was to have been obtained. The fact that Dr. W. W. Tarr as owner accepted the building as completed is immaterial. We are here relying upon a guaranty which by its terms is definite.

In the discussion of the question of liability of the parties to this contract, it is contended by the defendant that the guaranty is not negotiable and for this reason any defenses or equities that may exist or arise between the original parties to the contract prior to the intervention of rights of third parties or subsequent assignees, are proper and may be pleaded in defense to an action on the guaranty brought by subsequent transferees or assignees.

Upon this question the plaintiff concedes that the guaranty contract is not negotiable but by its terms is absolute, and that the guarantor can be released from liability only by complying with its terms. On the other hand, the plaintiff contends that there is no showing of compliance with the guaranty which would release the guarantor.

There is, however, a provision of the statute which has a material bearing upon this question now before us. Chapter 110, Ill. Rev. Stat. 1937, provides in ¶ 146, sec. 22 of the Practice Act:

"The assignee and owner of a nonnegotiable chose in action may sue thereon in his own name, and he shall in his pleading on oath, allege that he is the actual *bona fide* owner thereof, and set forth how and when he acquired title; but such action shall be subject to any defense or set-off existing before notice of the assignment; . . ." So, the question is a determining

factor in the defense offered in the instant case. There is evidence that the plaintiff did not acquire possession of the bonds, through which she claims the right to recover by the terms of the guaranty, until 1933, and 1936. Greenebaum Sons Investment Company was originally the owner and holder of the bonds, being the party of the second part in the guaranty contract in question. The evidence introduced indicates that Greenebaum Sons Investment Company was the owner of the bonds in question on the date of the completion of the building and the acceptance of the same as completed; that these bonds were sold to customers of Greenebaum Sons Investment Company after the completion of the building, and the $1,000 bond was reacquired, through purchase, by Greenebaum Sons Investment Company a month prior to the institution of this action and sold to one Mandel H. Harris at a substantial discount.

The party of the second part, Greenebaum Sons Investment Company, was entitled to a certificate of completion to be issued by Alfred S. Alschuler, it being the right provided for by the guaranty contract, and at the time of the execution of this contract the Investment Company was in possession of the bonds issued as provided for by this same contract, and in consideration of the question we have pointed out, we are of the opinion that this right of the Investment Company could be waived and was waived by the acceptance of the architect's certificate of completion issued by McNally and Quinn, the original architects employed in the construction of the building, and upon this certificate payments were made of the amounts due the contractor and the building accepted. This is further evidenced by the occupancy of the building by tenants in the fall of 1924, and so occupied ever since. While it is true the owner of the bonds could exercise what-

ever rights this guaranty contract provided, still the contract not being negotiable, it would be subject to the defense by the guarantor of the waiver by the Investment Company of this certificate of completion when it accepted the construction of the building as complete and paid the money provided for by the certificate, and possession by the owner taken, and tenants in occupancy the latter part of 1924. The waiver having occurred and the tenants being in possession before these bonds were sold, this was a defense which the guarantor could urge and did urge upon the trial of the case. It is hardly necessary to cite any authorities upon the question of what rights the bondholders had under the terms of the guaranty contract and the facts as they appear in the record. In discussing the rights of assignees under the terms of a nonnegotiable instrument, the Supreme Court in the case of *Hodson v. Eugene Glass Co.,* 156 Ill. 397, said:

"It is claimed, however, that the appellant Hodson is a *bona fide* holder for value of the note through an alleged assignment thereof to him by Fleming before maturity. So far as the chattel mortgage is concerned, the assignee of the note could take no other interest in the mortgage than that which was derived from the assignment of the note. The assignment of the note carries with it the mortgage as an incident to the principal debt, but in such case the assignee of the note takes only an equitable interest in the mortgage. The assignee of the mortgage takes it subject to the defenses which the mortgagor had against it in the hands of the mortgagee. Hodson had no other or greater rights in relation to the mortgage, and stood in no better position, than Fleming, the mortgagee." See also, *Miers v. Chas. H. Fuller Co.,* 167 Ill. App. 49. By analogy this applies to the litigation here in this court on appeal. The plaintiff seeks as assignee to recover un-

der the terms of the guaranty contract executed by the defendant and, as admitted, this contract not being negotiable the plaintiff takes it subject to the defense which the guarantor had against it in the hands of the Greenebaum Sons Investment Company. In the words of the opinion in the *Hodson* case, the plaintiff had no other or greater rights in relation to the guaranty contract, and stood in no better position, than the Greenebaum Sons Investment Company, the party of the second part to this contract.

It is our conclusion that the court did not err in denying the right of the plaintiff to recover and in entering judgment for the defendant. For the reasons stated the judgment is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN and HALL, JJ., concur.