# William D. Kennedy v. Supreme Lodge Knights of Pythias.

## Gen. No. 12,164.

1. CONTRACT—*when accepted proposition constitutes complete.* A letter containing an offer of employment which specifies all of the terms thereof, upon acceptance becomes a complete contract, even though it may refer to the authority pursuant to which it is written.

2. PRESIDENT—*what within general powers and duties of.* The employment of subordinates and the fixing of the terms of their employment are within the general duties and powers of the president of a corporation.

3. RATIFICATION—*what constitutes, of service contract.* Knowledge that salary is being paid and services performed under a contract for a specified term, operates as a ratification of the execution of such contract by one who may have been insufficiently authorized.

4. CORPORATE EXECUTION—*what essential to denial of.* A verified plea is essential to the right to deny the authority of the president of a corporation to execute a contract in the name and on behalf of the corporation.

Action of assumpsit. Error to the Superior Court of Cook County; the Hon. Jesse HOLDOM, Judge, presiding. Heard in this court at the March term, 1905. Reversed and remanded. Opinion filed December 14, 1905.

**Statement by the Court.** This appeal is from a judgment of the Superior Court of Cook county, for costs, on an instructed verdict. The plaintiff in error sued the defendant in error, a corporation, in *assumpsit,* filing a declaration April 22, 1901, consisting of the common *indebitatus assumpsit* counts, and a special count which states the legal effect of an instrument sued on, and (contrary to the rules of common law pleading) also attempts to make the instrument a part of the declaration by reference. Wrongly denominated an exhibit, the writing is, however, an appended copy of the instrument sued on. It is as follows:

"Office of the Board of Control of the Endowment
Rank Knights of Pythias, etc.
Chicago, Jan. 30, 1899.

W. D. KENNEDY, ESQ.,
6023 Princeton Ave., City.

Dear Sir and Brother: In accordance with the instruc-
tion of the Board of Control of the Endowment Rank, and
the authority given me as President thereof, I now notify you
that I hereby appoint you to take charge of the advertising
and editorial work to be done in connection with the Pythian
Press in behalf of the Endowment Rank. Your salary will
be $2,000 per year, payable monthly, and your engagement
will be for two years, commencing with February 5th, 1899.
Fraternally yours,
(Sgn.) J. A. HINSEY,
President Board of Control."

May 6, 1901, the defendant filed the plea of the general
issue (unverified), and three pleas of set-off based on *in-
debitatus assumpsit* counts against the plaintiff in favor of
the defendant. With them it filed an affidavit of its agent
that it had a good defense on the merits to the whole of the
plaintiff's demand.

May 14, 1904, the defendant made a motion for leave to
file and attach to its plea of the general issue an affidavit
verifying said plea. The court denied this motion, on the
ground that it was made too late. The cause was tried be-
fore a jury May 18, 1904.

The plaintiff first offered in evidence the instrument or
letter above set forth. It was objected to by the defendant
and the objection being sustained, the instrument was ex-
cluded and plaintiff excepted. Thereupon the plaintiff of-
fered in evidence a book produced by the defendant in ac-
cordance with notice given it, known as the Constitution and
General Laws, Rules and Regulations of the Endowment
Rank, Knights of Pythias. These were enacted, as is shown
by the book itself, by the defendant in error, The Supreme
Lodge Knights of Pythias, as the constitution, laws and rules
to govern its Insurance Branch, instituted for the Order of
the Knights of Pythias. The book was admitted.

Sections 1 to 3 of Article I of the Constitution provide for the creation of a "Board of Control" for the government of the insurance branch of the Supreme Lodge · Knights of Pythias, known as Endowment Rank, and that the President of the Board of Control shall be elected by the Supreme Lodge at each biennial convention.

Section 4 of Article I provides that the Board of Control shall have entire charge and full control of the Endowment Rank subject to such restrictions as the Supreme Lodge may from time to time provide.

Sections 1 and 2 of Article II of the Constitution provide that the Board of Control shall have jurisdiction over all matters pertaining to the insurance branch of the order, known as the Endowment Rank, and that it is authorized to create, hold and disburse the funds of the Endowment Rank.

Section 1 of Article III of the Constitution provides that the Board of Control shall hold meetings once in every three months.

Section 1 of Article I of the General Laws, Rules and Regulations provides that the President of the Board of Control shall have general supervision of the Endowment Rank, * * * and perform all duties required to enforce the provisions of the Supreme Statutes, Endowment Rank Constitution and these General Laws, Rules and Regulations.

Other articles of the Constitution and other articles of the Laws provide for carrying on the business under the administration of The Board of Control of a fraternal insurance society business for members of the Order.

The plaintiff then offered in evidence from the original minute book of its proceedings, kept by the Board of Control, produced by the defendant, a resolution enacted at a meeting of said Board October 30, 1898, as follows:

"RESOLVED, That continuing the rule in force since the organization of the Board of Control, the president thereof, John A. Hinsey, is hereby authorized and empowered during the interim of the regular quarterly session of the Board of Control and covering the ensuing biennial term to exercise general supervision over the affairs of the

Endowment Rank, to enforce the provisions and requirements of the constitution and the general laws, rules and regulations of the Endowment Rank; to employ, discharge and regulate the salaries of all assistants required in the office of the Board of Control; to engage organizers, solicitors and special agents for field work, or for making the examinations or investigations, and to contract with same in the allotment of territory, salaries, commissions, etc. * * * and generally to direct the business affairs of the Rank."

The plaintiff then offered in evidence the following adopted resolution from the minutes of the same meeting:

"It being the sense of the Board of Control that the salary now paid for managing the advertising matter of the Endowment Rank is excessive for the amount of work done, therefore, be it resolved, that the President is hereby directed to investigate the subject and report to the Board in January next the best possible terms upon which we can obtain such work properly and promptly performed, and resolved, that the expense thereof shall not exceed $125 per month all told between now and said next board meeting."

The plaintiff further offered in evidence from the minute book the following minutes of the meeting of the Board of Control January 27, 1899:

"The President presented for further action the unfinished matter of Brother W. D. Kennedy's employment, stating that in harmony with the resolution adopted at the previous session, he had conferred with Brother Kennedy, who refused to accept $125 per month to continue the editorial work hereafter performed. He had, however, offered to accept $2,000 per year without further expense to the Rank except stationery and postage. Brother Sample moved that the President be instructed to employ Brother Kennedy upon the terms stated. An aye and no vote being called for on the adoption of the motion, Brothers Hinsey, Blackwell, Loomis and Sample, voted in the affimative, and Brother Feathers in the negative. The President declared the motion adopted."

The plaintiff also offered from the minutes of the next meeting of the Board of Control, April 24, 1899, the following: "The minutes of the last quarterly session, January 26th and 27th, 1899, were read and approved."

All this matter so offered from the minutes of the various meetings of the Board of Control was by the Court admitted in evidence.

The plaintiff then, for the second time, offered the instrument or letter sued on, as above set forth. It was objected to by the defendant, and the court sustained the objection and denied the offer, to which ruling the plaintiff excepted.

It was then admitted on the record that the plaintiff performed services for the defendant corporation for a period of twenty-one months, lacking five days, beginning February 5, 1899, during which time he received a salary at the rate of $2,000 a year, which was paid to him in monthly installments of $166.67 at the office of the Board of Control by the defendant company.

The plaintiff being called as a witness was asked, "What was the work you did for the Knights of Pythias during the year and nine months for which you received $166.66 per month?" This question being objected to by counsel for defendant, counsel for plaintiff stated that he was offering to show that the defendant company ratified the contract which the president of the Board of Control made, by accepting the work provided for in the contract, on the terms therein mentioned, for the period of a year and nine months. The court thereupon sustained the objection to the question, and another objection to the matter offered as immaterial, and the plaintiff excepted.

The plaintiff then placed John A. Hinsey on the stand, who swore that he was President of the Board of Control of the Endowment Rank of defendant Company from 1888 to 1900.

On a preliminary question as to Kennedy's employment being put to him, counsel for defendant said, "We admit we knew Mr. Kennedy worked up to the first day of November,

1900, under the resolution relating to him and his offer and acceptance that has been read in evidence from the minute book. We don't know about any other contract but that."

Counsel for plaintiff replied: "I offer to show they did know. I offer to show that the fact that he was drawing this $166.66 a month on a contract running for two years, was reported regularly to the Board of Control at each quarterly section, that the vouchers and receipts issued to pay the $166.66, and the receipts taken for advertising were reported and audited by the Board of Control at each quarterly session from February 5, 1899, down to November 1, 1900, when he was discharged, and that it was customary to engage all employees of the Board of Control for two years, and that such custom has existed for years." To this offer, as incompetent and immaterial, counsel for defendant objected. The objection was sustained by the court and plaintiff excepted.

The plaintiff then offered from the minute book of the Board of Control, and there was received in evidence, a resolution adopted by the Board October 31, 1900, "that the services of William D. Kennedy be dispensed with from and after November 1, 1900, and that he be so notified at once." A letter from the Secretary of the Board of Control to the plaintiff, dated November 3, 1900, notifying him of this resolution, was offered and received in evidence. Then plaintiff offered a letter from himself to the defendant Company, dated November 10, 1900, as tending to establish his willingness and ability to perform his part of the contract. The objection was made that the letter was immaterial, and on that ground it was excluded, to which exclusion the plaintiff excepted. Another letter written February 1, 1901, by the plaintiff to the President of the Board of Control, again tendering his services to the Endowment Rank, "for the remaining five days covered by the contract made with John A. Hinsey, then President of the Board of Control, under date of January 30, 1899," and inclosing bills for services from January 1, 1901, to February 5, 1901, and demanding payment from November 1, 1900, was offered.

The Court excluded the letter on the ground of immateriality, and the plaintiff excepted. It was then admitted that plaintiff had received no salary for any time after November 1, 1900.

The defendant then withdrew its pleas of set-off, and moved the court to instruct the jury to bring in a verdict finding the issues for the defendant.

Over the objection and exception of the plaintiff the court granted the motion, and gave the instruction, in accordance with which the jury brought in a verdict for the defendant. The court denied plaintiff's motion for a new trial, and entered judgment on the verdict. The plaintiff then prosecuted this appeal, assigning as error the before described instruction and the refusal to admit competent evidence offered by the plaintiff.

BENSON LANDON, for plaintiff in error.

PECK, MILLER & STARR, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The judgment in this case must be reversed and the cause remanded. The decision of this appeal and of the original cause turns entirely upon the exclusion from evidence of the instrument sued on when offered in the first instance, its exclusion a second time when offered after the Constitution and Laws of the Endowment Rank Knights of Pythias had been proven, and the rejection of the evidence then offered as a further basis of its admission, that the alleged contract evidenced by it had been ratified by the acceptance for four months by the defendant company of the work provided for in it, and by the payment by said defendant of $166.66 a month for that work, with the knowledge of the Board of Control that plaintiff was drawing this sum on a contract made with him running for two years.

The instruction complained of was, of course, the necessary complement of the refusal of this company.

We think the rulings of the trial court were erroneous. The exclusion of the letter of January 30, 1899, was not

erroneous when it was first offered.   Had it purported to be
the letter of the president of the defendant corporation, in
accordance with the instructions of that corporation, it would
have been admissible, as will be hereinafter pointed out,
without additional proof of the authority of the President,
but the "Board of Control of the Endowment Rank" is not
the defendant corporation, The Supreme Lodge Knights of
Pythias, and it was proper to require that the agency of the
one for the other should be established before the instrument
was read. . This connection and agency were however estab-
lished by the Constitution and Laws of the Endowment
Rank, produced by the defendant corporation and shown on
their face to be the enactments of that corporation.   When
that was done, the instrument or letter became immediately
admissible, without the further evidence from the minute
book of the Board of Control.

Defendant in error claims that the phrase in the instru-
ment, "In accordance with the instructions of the Board of
Control of the Endowment Rank, and the authority given me
as President thereof," shows that the instrument did not in-
clude the whole contract—that it referred to matter outside
of itself for the authority of the president, and that con-
sequently, until the instructions and authority referred to
were shown, the letter was inadmissible, and that if when
shown they fell short, as between the Board and its presi-
dent, of conferring authority to make the exact contract of-
fered for plaintiff's acceptance, plaintiff cannot claim its
benefit.

We do not agree with this contention.   The instrument
was complete in itself because it contained all the terms of
the employment and left nothing to learn from reference to
any other document or record.   Its acceptance by plaintiff
by his going to work under it, completed and rendered ef-
fective the contract between him and the defendant.   Mem-
ory v. Niepert, 131 Ill., 623.

That the contract thus made on the part of the defendant
in error by the officer which it had appointed to transact
precisely this kind of business was "in accordance with in-

structions" of the proper governing body, and "the authority" given him as president, etc., is nothing more than the law would imply.   The insertion of this language in the letter could not weaken its force or effect.   We think that even if Mr. Hinsey had transcended the actual instructions given to him by the Board of Control in hiring the plaintiff in error for a term of two years, the rights of plaintiff in error would not have been affected thereby.

The contract (or offer which became a contract in writing between the parties by acts in acceptance, Memory v. Niepert, *supra*), was one plainly within the general duties of the president of the Board of Control to make.   Smith v. Smith, 62 Ill., 493.

Cases cited by defendant fail in point, because the instrument, as we hold, was complete in itself, and the fact that "instructions" were referred to in it generally, called for no investigation by the plaintiff of any specific votes or resolutions of the Board.   What might have been the effect in this regard had a particular resolution or action been specified, it is not necessary for us to decide.   But even if the contention of defendant in error that the plaintiff's rights depended on the specific authority given Hinsey by the resolutions of the Board of Control on October 30, 1898, and January 27, 1899, were allowed, we do not think this instrument was inadmissible when offered in connection therewith.   Taken together, the resolution authorizing the president during "the ensuing biennial term" "to exercise general supervision over the affairs of the Endowment Rank * * * to engage organizers, solicitors and special agents for field work, * * * and to contract with same in allotment of salaries * * * and generally to daily direct the business affairs of the Rank," and the resolutions concerning the employment of plaintiff in error, seem to us to fully authorize the two years engagement.   We think that it was only as to the amount of salary in which the Board sought to limit the authority of Mr. Hinsey to contract with Mr. Kennedy, not as to the term, which, within a reasonable limit, was impliedly left to his discretion.

Moreover, any doubt, had there been any, as to the admissibility of this instrument, would have been removed by the admission of the offered evidence as to ratification. Plaintiff offered to prove that the Board of Control paid him, without objection, $166.66 a month for his services for twenty-one months, knowing that he was claiming and drawing it under a contract claimed to run for two years. This evidence seems to us plainly admissible to prove a ratification and sufficient to establish it. Lake Street Elevated R. R. Co. v. Carmichael, 184 Ill., 348; Louisville Ry. Co. v. Carson, 151 Ill., 444; Atwater v. American Exchange Bank, 152 Ill., 605-620; W. B. Conkey Company v. Goldman, Appellate Court, First District, December 4, 1905.

And in addition to all this, we agree with plaintiff in error's contention that in the absence of a verified plea defendant was in no position to object to the admission of the contract signed by Hinsey as the "President Board of Control" on the ground that it was not the act of the Board of Control. Dwight v. Newell, 15 Ill., 333; Richelieu Hotel Co. v. International Company, 140 Ill., 248; Firemen's Insurance Company v. Barnsch, 161 Ill., 629.

The judgment of the Superior Court is reversed and the cause remanded.

*Reversed and remanded.*