THE GARRISON CANNING COMPANY and F. S. ULERY, G. W.
AULD, J. W. HANNA, and MARK REEVE, Appellants, v.
J. S. STANLEY, as Administrator *de bonis non cum testa-
mento annexo,* Estate J. B. Reeve, Deceased, and J. S.
Stanley.

**Corporations:** LOANING MONEY: ULTRA VIRES. Although the arti-
1   cles do not expressly authorize a corporation to loan money,
    yet if not prohibited thereby it may temporarily place its funds
    at interest while not needed in the prosecution of its business,
    and such acts are not ultra **vires.**

**Same:** ESTOPPEL. A corporation cannot insist upon its want of
2   authority to enter into a contract which has been executed by
    the other party.

**Same:** OFFICERS: DEALINGS WITH CORPORATION: FRAUD: EVIDENCE.
3   An officer of a corporation may individually deal with the cor-
    poration without any necessary imputation of fraud; and in
    case of a loan of corporate funds to an insolvent officer the
    contract will not be held invalid, where there is no showing
    that either of the parties had a knowledge of the fact of in-
    solvency at the time of making the loan. Evidence held in-
    sufficient to show a fraudulent concealment of insolvency.

*Appeal from Benton District Court.*— HON. OBED CASWELL,
                              Judge.

FRIDAY, JANUARY 11, 1907.

THIS is an action to have a claim of plaintiff the Gar-
rison Canning Company against the estate of defendant's tes-
tator decreed to be a preferred claim, and to rescind and set
aside a settlement of such claim as a claim of the third class,
by which settlement the other plaintiffs as directors of the
company have become bound to refund to the estate a por-
tion of the amount paid to the company under such settle-
ment. There was a decree for defendants, and plaintiffs ap-
peal.— *Affirmed.*

*J. D. & C. Nichols,* for appellants.

*Whipple & Brown,* for appellees.

McCLAIN, J.— The Garrison Canning Company was incorporated in 1893, with articles providing that " the general nature of the business to be done by this corporation shall be that of canning corn, vegetables, and anything that is canned or preserved as food," and that " the regular meeting of the stockholders shall be held on the second Tuesday of January in each year following this one, at which time there shall be elected from among the stockholders a board of directors consisting of five members, who shall have the general management of the business of the corporation." In January, 1897, J. B. Reeve, defendant's testator, was one of the board of directors and treasurer of the company. At a director's meeting held in that month Reeve offered to borrow the balance in the treasury of the corporation until July 1st at 5 per cent. interest, to be credited to the company each month on the balance in his hands as shown by the books, paying out in the meantime such amounts as should be drawn by checks upon him for current bills. This proposition was accepted by the company and a passbook was kept by Reeve in which the company was credited with the amounts received from it and debited with the amounts paid out on its checks, and at the end of each month interest was entered up to its credit at the rate of 5 per cent. per annum on the balance as shown by such book. It appears that this arrangement was entered into because the canning company had no use for the funds on hand until the beginning of the canning season in July, and Reeve, who owned and operated a private bank in which the money was being kept on deposit, wished to make use of it in his business. Reeve died in June, 1897, having in his hands at that time under the arrangement above described nearly $8,000 of the company's money. Soon after the death of Reeve the remaining directors of the company

desiring to use its funds in carrying on its business during the canning season, tried to secure payment of their claim from Reeve's widow, who was temporary administratrix of his estate, but they were advised by her attorney that as their claim was of the third class (under Code, section 3348), and therefore not payable until the expiration of one year (under Code, section 3350), and as the temporary administratrix had in any event no authority to pay claims, nothing could be done unless by an order of court. Thereupon an application to the probate court, signed by the directors, was made, in which the court was asked to order the payment to them of the amount of the company's claim, with the condition that they should individually agree to refund later to the estate on final settlement the difference between the amount paid to them for the company and the amount that would have been paid to the company on final settlement of the estate had its claim been filed and established as of the third class, with the further condition that said directors would save the estate harmless from any liability on account of certain obligations of the company outstanding as to which the deceased was liable as surety. The widow, as temporary administratrix, united with the petitioners in this request, and the court approved the arrangement.

In accordance with this order, the funds of the company were paid to it in full soon after the death of testator, and at a time when it was assumed by all parties that the estate was entirely solvent. Subsequently, however, it developed that testator was insolvent at the time of his death, and had been insolvent at the time the funds of the company were loaned to him, and it is now shown that, if the claim of the company is to be treated as a claim of the third class, not more than 60 per cent. thereof would have been paid on the final settlement of the estate had not the arrangement already described been made, and that, therefore, the directors who joined in the application for the order under which the company's money was paid in advance will be liable to the estate

to the extent of about 40 per cent. of the money thus paid. It is from this situation that the plaintiffs seek to have relief.

The grounds on which relief is asked are, first, that the claim of the company was, in fact, a preferred claim, payable in full out of the estate, without regard to other creditors, because the act of the directors in loaning the money to Reeve was *ultra vires,* and was also entered into as the result of a fraudulent concealment on Reeve's part of his insolvent condition; and, second, that the arrangement by which the directors received the money in advance and agreed to make good any deficiency in the amount which should be found payable by the estate was entered into through mistake. The consideration of the questions thus raised involves the determination of a few questions of law which may be very briefly disposed of.

I.   While it is true as a general proposition that a corporation authorized by its articles only to carry on a mercantile or manufacturing business has no authority to engage in the business of loaning money, it does not follow that it has not the power in the management of its funds to loan them out temporarily at interest when not needed in the prosecution of its business. The loaning of money not being expressly prohibited to the corporation, it may, as we think, without any question, make such temporary disposition of the funds which it has on hand from time to time as to secure a profit, the very object of its organization being to earn money for its stockholders in the prosecution of its business. Such a temporary and incidental loaning of money is not the engaging in the business of making loans, which is outside the scope of the authority of manufacturing corporations. See in general, as supporting this proposition:   *Thompson v. Lambert,* 44 Iowa, 239; *Wardner, Bushnell & Glessner Co. v. Jack,* 82 Iowa, 435; *Fidelity Ins. Co. v. German Savings Bank,* 127 Iowa, 591; *Jacksonville, etc., R. & N. Co. v. Hooper,* 160 U.

1. CORPORATIONS: loaning money: *ultra vires.*

S. 514, 523 (16 Sup. Ct. 379, 40 L. Ed. 515); 1 Clark & Marshall, Private Corporations, section 168 et seq.

II.   But, even if the loaning of the funds of the corporation to Reeve was *ultra vires,* the corporation and its directors acting for it are estopped from now insisting that the transaction was invalid.   The agreement with Reeve was fully carried out and completed by

2. SAME: estoppel.

him, and it is too late now, when it appears that the transaction, instead of resulting as was contemplated to the benefit of the corporation, has resulted to its loss, to set up the plea that it was *ultra vires.*   A corporation cannot insist on its own want of authority to enter into a contract which has been fully executed and carried out by the other party thereto. *Fidelity Ins. Co. v. German Savings Bank,* 127 Iowa, 591; *Cathcart v. Equitable Mut. L. Ass'n,* 111 Iowa, 471; *Lucas v. White Line Transfer Co.,* 70 Iowa, 541; *Iowa Lumber Co. v. Foster,* 49 Iowa, 25; 2 Cook, Corporations, section 681. It is argued that the corporation is in no better position than if it had not made the unauthorized loan, for Reeve would have been in duty bound to pay interest on the funds of the corporation converted by him to his own use, and therefore that it was under no obligation to rescind the unauthorized transaction by returning the funds received by it, including interest thereon, in order to defeat the plea of estoppel.   But, as it seems to us, this is to make the validity of the transaction depend on subsequent results.   It cannot be questioned that the corporation did receive that which was contemplated as the benefit to inure to it out of the arrangement with Reeve, i. e., credit for the interest which he agreed to pay on monthly balances, and at the time of his death it had a valid claim against Reeve's estate for the full amount of the funds in his hands, including the interest with which it might have been credited.   It is too late now, after a condition has arisen which was not anticipated, to say that the transaction was *ultra vires,* and escape the loss to which it is subject by reason of this unanticipated result.

III.   Another ground relied upon for the claim that the transaction with Reeve was invalid, and that the funds received by him were received in trust for the corporation in such sense that the claim therefor is a preferred claim, is that the company entered into the arrangement with Reeve in ignorance of the fact that he was insolvent, and that the concealment by him of his insolvency rendered the arrangement for the loan invalid.   In the absence of any fraud or wrongful concealment on the part of Reeve, the transaction was not one open to any objection on the ground that Reeve was a director and the treasurer of the corporation.   It is not necessary to cite authorities in support of the proposition that an officer of the corporation may in his individual capacity deal with the corporation without any necessary imputation of fraud. Save for the alleged insolvency of Reeve unknown to the other directors, there could be no ground for assailing the regularity of the loan, provided the corporation had authority to loan its funds to any person.   The transaction, if invalid on account of any impropriety of conduct on Reeve's part, was rendered invalid only by the alleged fraud in the concealment of Reeve's insolvency.   It is elementary that fraud will not be presumed, but must be established; and there is not the slightest evidence in the record that Reeve was aware of his insolvent condition at the time the arrangement was made. He was a private banker, carrying on his business with the entire confidence of every one having dealings with him, including his associate directors, until the time of his death. The only evidence that he was insolvent in January, when the loan of the company's money to him was made, is that an investigation of his assets after his death showed that they were insufficient to meet his liabilities, and the testimony of the witness who, as an expert, made an examination of his financial condition after his death, tends to show that a considerable amount in value in bills and notes held by him as a part of the assets of his bank was worthless.   But there is no evi-

*3. SAME: officers: dealings with corporation: fraud: evidence.*

dence whatever that Reeve knew these bills and notes to be of substantially less value than the amount for which they were valued on his books, or that, if he had continued to manage his business in the usual way, he would not have been able to realize out of the bills and notes a much larger amount than they were estimated to be worth to his estate. Nor is there any evidence that his other property might not have been estimated by him as of such value that he could not as a reasonable man regard himself as financially solvent and able to meet the obligation which he assumed to the corporation. We think the evidence as to insolvency falls far short of proving such knowledge of insolvency, actual or presumed, on the part of Reeve at the time he entered into the contract with the corporation as to justify us in holding that he was guilty of a fraudulent concealment such as would render the transaction between him and the corporation void.

IV. As we find that the claim of the corporation against the estate of Reeve was in fact a claim for indebtedness incurred under the contract of loan, we have no occasion to discuss the question whether any mistake on the part of the directors in assuming the claim to be of the third class only, instead of a preferred claim, was sufficient to require the setting aside of this arrangement, and relief to the directors from their obligations to make good any shortage in the amount which should be found payable to the corporation out of the funds of the estate.

We reach the conclusion that plaintiffs were not entitled to any equitable relief, and the judgment of the trial court is *affirmed*.