## WAINWRIGHT *v.* P. H. & F. M. ROOTS COMPANY.

### [No. 21,871.   Filed January 9, 1912.]

1. CORPORATIONS.— *Manufacturing.— Directors.—Business.*—Under §5070 Burns 1908, §3854 R. S. 1881, providing that the business of a manufacturing company "shall be managed by not less than three nor more than eleven directors," the business of such a company must be conducted by the directors, provisions for whose election is provided by such statute.   p. 686.

2. CORPORATIONS.—*President.—Powers.*—The powers of the president of a manufacturing corporation to bind the corporation, or to control its property, are neither given by statute, nor implied by law; but if he exercises such power it can be justified only by a direct, or constructive, grant thereof from the board of directors.   p. 686.

3. CORPORATIONS.—*General Manager.—Powers.*—The general manager of a manufacturing corporation is impliedly authorized to do all acts necessary in the usual and ordinary course of the business of such corporation.   p. 687.

4. CONTRACTS.—*Ultra Vires.—Corporations.—General Manager.— Answer.*—In an action for the breach of a contract whereby the general manager of defendant manufacturing corporation on behalf of the company agreed to erect a building and to install machinery for the manufacture of certain articles necessary in defendant's business, making the plaintiff superintendent thereof for five years at a certain salary and giving him a certain share of the profits thereof, an answer that such superintendent had no authority to execute such contract and that it was never ratified by the stockholders nor the board of directors, is sufficient on demurrer.   p. 687.

5. CONTRACTS.—*Substantial Performance.—Corporations.—Erecting Building.*—Where a manufacturing corporation contracted to erect a new building in which the plaintiff was to manufacture certain articles for such corporation, an answer, by such corporation, in an action for the breach of such contract by its failure to erect such building, that it had offered to provide a suitable building for such purpose, already erected and having all the required facilities, sufficiently shows a substantial compliance with such portion of the contract.   p. 688. ·

6. CORPORATIONS.—*Contracts with Officers.—Validity.*—Whether a contract between a corporation and an officer thereof is valid, voidable, or void, depends largely upon the nature and the terms of the contract, the circumstances under which it was made and who acted on behalf of the corporation; thus loans of money by a director to the corporation, and contracts for personal services

to it, are usually upheld, where such contracts are free from
blame. *Port* v. *Russell*, 36 Ind. 60, limited.  p. 689.

7.  CONTRACTS.—*Validity.—Conclusions.—Answer.*—An    allegation
in an answer, that the contract sued on was illegal and void,
states a conclusion.  p. 689.

8.  CORPORATIONS.— *Officers.— Agents.— Duties.*— The officers of a
corporation are its agents, and their duty is determined upon the
same principles of law that are applicable to other agents; and
thus if the agent's acts in securing a contract with the corpora-
tion are fraudulent, such contract is voidable at the election of
the corporation; but if his contract is fair and open, it is valid.
p. 692.

9.  CORPORATIONS.—*Contracts  with  Directors.—Validily.*—A  con-
tract by which a manufacturing corporation agreed to erect a
building, install the machinery necessary to the manufacture of
certain articles used by it, and making one of its directors the
general superintendent thereof for five years at a certain salary
and a certain part of the profits thereof, is not void, nor neces-
sarily voidable.  p. 693.

10.  CONTRACTS.—*Cross-Complaint for Breach of Another Contract.
—Counterclaim.—Sufficiency.*—To a complaint against a corpora-
tion for the breach of a contract, for the superintendence of a
factory to be erected, such contract abrogating an existing one
for the superintendence of certain other work, a cross-complaint
against such plaintiff for damages for a breach of the abrogated
contract, is insufficient as a counterclaim in recoupment, since
it does not grow out of the same cause of action.  p. 693.

11.  SET-OFF AND COUNTERCLAIM.—*Cross-Complaint.—Recoupment.*
—A cross-complaint, pleaded as a counterclaim, or in recoup-
ment, must not only state a cause of action, but it must be so
germane to the cause of action set out in the complaint that
complete justice, in relation to the complaint, cannot be done to
all the parties without a consideration of the matters stated in
such cross-complaint.  p. 694.

12.  SET-OFF AND COUNTERCLAIM.—*Nature of.*—To an action for a
money demand on contract, a set-off may be pleaded, growing out
of a debt, duty, or contract, liquidated, or not, held by defendant
when the action was filed, and which was matured at or before
the time it is offered; but such set-off, though not strictly consti-
tuting a defense, must be pleaded as a cross-action, and must
state a cause of action in favor of the pleader.  p. 695.

13.  CONTRACTS.—*Torts.—Set-Off.*—Claims arising out of tort can-
not ordinarily be pleaded as a set-off in an action on contract.
p. 695.

14.  CONTRACTS.—*Breach  of.—Cross-Complaint.—Torts.*—A  cross-

complaint for the breach of a contract setting out specific instances of such breach, sounds in contract and not in tort. p. 696.

15. JUDGES.—*Successors.—Power to Render Judgment Where Predecessor Tried Case.—Special Findings.*—Where a trial judge tried a case, wrote the special findings, signed them, and stated his conclusions thereon, but died before announcing them in open court, his successor has no authority to enter such findings and conclusions and render judgment thereon; the case must be retried. *Hedrick* v. *Hedrick,* 28 Ind. 291, and *Reed* v. *Worland,* 64 Ind. 216, distinguished. pp. 696, 698.

16. ACTION.—*Dismissal.—Effect.*—The plaintiff, at any time before the decision is announced, or filed, may dismiss his action, thus rendering useless special findings already prepared. p. 698.

From Henry Circuit Court; *Ed Jackson,* Judge.

Action by William W. Wainwright against the P. H. & F. M. Roots Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Reversed.*

*Finley H. Gray* and *Stanford & Barnhart,* for appellant.
*Forkner & Forkner* and *Conner, Conner & Chrisman,* for appellee.

Cox, J.—Appellee is a private manufacturing corporation organized under the laws of this State, and carrying on its business in the city of Connersville. Appellant was formerly the superintendent of its factory, under the supervision of its president; and while acting in this capacity, under a written contract of employment for a term of years which had not yet expired, and as a director of the corporation, he entered into another written contract, which cancelled the existing contract, and in which it was agreed, in substance, that appellee would separate from its factory a particular and considerable part of its manufacturing business, and install it in a special foundry and machine shop, to be properly constructed and equipped by appellee with the necessary machinery and appliances; that therein certain named articles were to be manufactured at a fixed schedule of prices; that, in addition to providing the building and machinery, appellee was to furnish all necessary capital to

pay for labor and materials for manufacturing the articles to be turned out by the special factory; that appellant was to have entire control over the special factory, and was to provide all labor and materials necessary promptly and efficiently to perform the work contemplated, and was to turn such work out complete and first class in respect to workmanship, design and material at the prices fixed in the contract, or lower if possible; that the work was to be done under the cost system, and that if appellant succeeded in producing the work at less than the prices fixed in the schedule, the difference between the prices so fixed and the actual cost was to be divided equally between appellant and appellee; that in addition to such percentage of possible additional profits, appellant was to be compensated by a yearly salary of $1,800, and half the profit on repairs of articles manufactured and returned for repairs; that appellant was not to incur any liability in case of his inability to produce the various articles to be manufactured at the prices named; and that the relation created by the contract should continue for five years.

This contract was entered into and executed by appellant and the president and general manager of appellee company. The performance of its provisions was never entered upon, and appellant sued for damages for its breach, alleging appellee refused to perform its part of the conditions and that he was ready at all times to perform those imposed upon him.

In addition to the general denial, appellee answered the complaint by second, third and fourth paragraphs of answer, to which appellant demurred. These demurrers were overruled, and these rulings are relied on by appellant as being reversible errors.

The second paragraph of answer was verified, and admitted the status of appellee as an Indiana manufacturing corporation, and the execution of the contract by Johnston, its president and general manager; but it averred, in substance,

that the authority of such president was only that which the law gave the president of such a corporation, and that no additional powers had been delegated to him as president; that the only authority Johnston had as general manager of the company at the time of the execution of the contract was to manage its ordinary business affairs; that he was not authorized by the by-laws nor by the board of directors to engage in new enterprises, nor to delegate, by contract or otherwise, any part of the business of the company to the management and control of another; that Johnston, neither as president nor as general manager, had authority to execute the contract in the name of and for and in behalf of the company, and that neither the directors nor the stockholders had ever ratified or approved the action of Johnston in executing it.

The statute authorizing the creation of corporations such as appellee, provides that the business of such corporations shall be managed by the board of directors, for the election of which the statute makes provision. §5070 Burns 1908, §3854 R. S. 1881.

The second paragraph of answer alleges that, as president, Johnston had only such powers as the law gave him. This section of the statute placed the power to manage the business of appellee in its board of directors, and no such power is conferred on the president as such. The general rule is that the office of president of a private corporation of itself confers no power on the incumbent to bind the corporation or control its property. His powers as agent must come by delegation from the corporation through the board of directors, formally and directly granted, or implied from its habit or custom of doing business. 10 Cyc. 903; 3 Cook, Corporations (6th ed.) §716; 2 Thompson, Corporations (2d ed.) §§1451, 1464; *National State Bank* v. *Vigo County Nat. Bank* (1895), 141 Ind. 352, 355, 50 Am. St. 330. The answer alleges that no authority beyond that

given him by law had been delegated to Johnston as president.

The office of general manager is of broader import than that of president, and implies authority in one invested with it to do such acts as are necessary in the usual and

3. ordinary course of the business carried on by the corporation. 10 Cyc. 909; 3 Cook, Corporations (6th ed.) §719; 2 Thompson, Corporations (2d ed.) §§1465, 1466, 1575; 4 Words and Phrases p. 3073 *et seq.; Louisville, etc., R. Co.* v. *McVay* (1884), 98 Ind. 391; *Cushman* v. *Cloverland Coal, etc., Co.* (1908), 170 Ind. 402, 405.

But here we have a contract of rather an unusual and extraordinary character. The general manager gets his authority by delegation from the board of directors.

4. Under our statute the directors are elected annually by the stockholders. The stockholders then may make an entirely different board of directors in one year and such new board may displace the general manager and select another. The terms and character of the contract under consideration may not only give rise to the implication that it may be beyond the usual and ordinary course of the business of appellee in separating that part dealt with from the main business, and placing it under the entire control of appellant, with a division of the profits, but it also does this for a period of five years which may be beyond the terms of both the general manager and board of directors. Added to this showing, the answer directly alleges that Johnston as general manager had no authority to execute the contract for the corporation, and that it was never ratified nor approved by the board of directors or stockholders. The answer by force of this last allegation was sufficient to withstand a demurrer, and raised an issue of fact whether Johnston had such authority. *National State Bank* v. *Vigo County Nat. Bank, supra; Kennedy* v. *Supreme Lodge, etc.* (1905), 124 Ill. App. 55; *LaPlant* v. *Pratt-Ford Greenhouse*

Co. (1907), 102 Minn. 93, 112 N. W. 889; *Perryman & Co.* v. *Farmers, etc., Mfg. Co.* (1910), 167 Ala. 414, 52 South. 644.

Appellee's third paragraph of answer alleged, in substance, that at the time of the execution of the contract there was no definite agreement relative to the particular place where the building for the new enterprise, which by the terms of the contract appellee agreed to construct and equip, was to be located, but that the location was left to the discretion of appellee; that at the time there was in East Connersville, which was in close proximity to the city wherein appellee's main business was located, a building erected for manufacturing purposes that was a better one for the purposes of the contract than the one contemplated by the parties to the contract, and advantageously located in respect to transportation facilities and otherwise; that soon after the execution of the contract, appellant personally inspected such building and expressed his opinion that the building itself and its location were ideal for the business to be carried on under the contract; that appellee thereupon arranged with the owner of the building to lease it for the purpose of carrying out the contract; that appellee repeatedly notified appellant that it was ready and willing properly to equip said building, and in all things to comply with the terms of the contract, except the one provision for the erection of a new building; that appellant was secretly trying to arrange with other parties to enter business as a competitor of appellee, and repeatedly notified appellee that he would not carry out the contract, unless appellee would construct a new building. Appellant's objection to this paragraph of answer does not go to the fact that appellee had offered to provide a building then existent, rather than to build a new one in accordance with the provisions of the contract, but that this building was in a different place from that contemplated for the erection of the new one. The contract, it is conceded, does not fix such place, but it is insisted by counsel for appellant that a lo-

cation in the city of Connersville, where he lived and where appellee's shops and business were located, was intended. If this be so, it would seem to be apparent that the location of the building proffered was fairly within that intent. It was in close proximity to the city, and obviously a suburb of it. It is alleged that it was a larger and better building than the contemplated new one, and that a new one could not have been erected at a more advantageous location, or one better adapted to the purpose of the parties. The doctrine of substantial performance is not limited to building contracts. 3 Page, Contracts §1388, and the numerous cases there collected. We think the answer alleged facts sufficient to show, as against the demurrer, that appellee had held itself in readiness substantially to comply with its part of the contract.

The fourth paragraph of answer alleged that at the time of the execution of the contract sued on, and thereafter, appellant was a duly elected, qualified and acting director of appellee company, and that the contract was therefore illegal and void.

That the contract was illegal and void is the pleader's conclusion from the bare fact of appellant's relationship to the appellee, as one of its directors, at the time the contract was made, and the question for decision is, therefore, whether as a matter of law it must be so held to be. The cases of *Port* v. *Russell* (1871), 36 Ind. 60, 10 Am. Rep. 5, and *Wayne Pike Co.* v. *Hammons* (1891), 129 Ind. 368, are relied on by counsel for appellee as sustaining the action of the trial court in overruling the demurrer to this answer and the proposition that contracts between directors and their corporations are unqualifiedly void. It is true that language is used in the opinion of the court in the case first mentioned which would seem to indicate that the judge who wrote it firmly believed that the rule should be that all such contracts should be con-

sidered void and unenforceable. But this language was used in passing upon the sufficiency of a complaint for equitable relief against contracts between directors and the corporation .which the allegations of the complaint showed were procured through a conspiracy among the directors and were saturated with frauds against the company and for the benefit of the directors in the manner in which they were executed. The allegations of fraud, together with the fiduciary relation of the directors to the corporation, manifestly made a case for equitable relief against the contracts. So far as that case may be said to assert the broad rule to be that all contracts between directors and their corporate body are void, it must be considered dictum without appreciable support anywhere.

Where the opinion in the case of *Wayne Pike Co.* v. *Hammons, supra,* touches the question in this case at all we find the following: "The officers of a corporation are its agents, and they are governed by the rules of law applicable to other agents, as between themselves and their principal, in so far as such rules relate to honesty and fair dealing in the management of the affairs of their principal. They can no more use the business of their principal for their own private gain than any other agent, and should they do so they should be held to the same strict rule of accountability as the agent of a private person." The court then applied this statement of the duty of corporate officers to test the sufficiency of a complaint for equitable relief which charged conspiracy and fraud on the part of directors of a corporation in dealing with corporate concerns to their personal advantage.

There are in the books almost innumerable and seemingly conflicting and irreconcilable judicial expressions on this question, many of which are dicta. These judicial pronouncements run from the broad and unqualified propositions that in no case can a director be allowed to take or make a contract with his company and that such contracts when made are void, to the other extreme that such contracts

are valid. Between these two boundaries of the case law on the subject is found what is perhaps the more practicable view that such contracts are merely voidable at the option of the corporation. Mingled with these three general rules there are numerous cases that seemingly involve various departures from and modifications of all of them. A general review of what seems to be a condition of fog and confusion in the many cases dealing with the question would be unprofitable and impracticable in this opinion. See, however, 10 Cyc. 794, 807; 21 Am. and Eng. Ency. Law (2d ed.) 899 *et seq.;* 2 Cook, Corporations (6th ed.) §649; 2 Thompson, Corporations (2d ed.) §1224 *et seq.;* 1 Morawetz, Priv. Corp. (2d ed.) §516 *et seq.;* 2 Purdy's Beach, Priv. Corp. §§739, 742; 2 Pomeroy, Eq. Jurisp. (3d ed.) §956 *et seq.;* 3 Pomeroy, Eq. Jurisp. (3d ed.) §1077; 1 Page, Contracts §181.

From the mass of legal discussion of the various phases of the question this appears: That the validity of such a contract, and whether it is even voidable, often depends very much upon its nature and terms, the circumstances under which it was made, and who acted for the corporation in the making. Contracts for the loan of money by a director to his company, and contracts for personal services to it which are outside the scope of his duties as an officer are generally upheld as valid, when such contracts are open and otherwise free from blame. 10 Cyc. 812; 21 Am. and Eng. Ency. Law (2d ed.) 905; 1 Page, Contracts §181; 2 Thompson, Corporations (2d ed.) §1224 *et seq.; Levering* v. *Bimel* (1897), 146 Ind. 545; *Nappanee Canning Co.* v. *Ried, Murdoch & Co.* (1903), 159 Ind. 614, 59 L. R. A. 199; *Kenner* v. *Whitelock* (1899), 152 Ind. 635; *Twin-Lick Oil Co.* v. *Marbury* (1875), 91 U. S. 587, 23 L. Ed. 328; *Savage* v. *Madelia Farmers Warehouse Co.* (1906), 98 Minn. 343, 108 N. W. 296; *Henry* v. *Michigan, etc., Assn.* (1907), 147 Mich. 142, 110 N. W. 523; *Garrison Canning Co.* v. *Stanley* (1907), 133 Iowa 57, 110 N. W. 171; *Mitchell* v. *United, etc., Paper Co.*

(1907), 72 N. J. Eq. 580, 66 Atl. 938; *Bagley* v. *Carthage, etc., R. Co.* (1900), 165 N. Y. 179, 58 N. E. 895; *Babcock* v. *Farwell* (1909), 146 Ill. App. 307; note to *Beach* v. *Miller* (1889), 17 Am. St. 291, 298.

The law was correctly stated in *Wayne Pike Co.* v. *Hammons, supra,* that directors of corporations are its agents, and in this relationship are governed by the same

8.   rules of law and are held to the same strict rule of accountability, honesty and fair dealing between themselves and their principal in dealing with the subject-matter of their agency as other agents. If the agent act for himself and his principal at the same time in a matter connected with the relation between them, his conduct is constructively fraudulent, and if a contract be the result it is voidable at the election of the principal. It is presumed, where he is thus potential on both sides of the contract, that self interest will overcome his fidelity to his principal to his own benefit and his principal's hurt. But he may, deal directly with his principal, and if they are on equal terms, and the principal has full knowledge of the matter, the contract will be valid, and he may so deal with the principal through other agents who have authority adequately to represent the principal's side of the contract. So the general rule seems to be that where the contract between a corporation and one of its directors is made on the part of the company by a majority of the directors acting for its interests honestly and in good faith, and with full knowledge of the matter, or by another independent agent with authority to act for it, such contract is not even voidable, except for unfairness or fraud, for the presence of which courts will closely scrutinize the contract. 2 Am. and Eng. Ency. Law and Pr. 1059, 1068; 1 Morawetz, Priv. Corp. (2d ed.) §527; 2 Purdy's Beach, Priv. Corp. §739; 2 Thompson, Corporations (2d ed.) §1224 *et seq.;* 2 Cook, Corporations (6th ed.) §649; 2 Pomeroy, Eq. Jurisp. (3d ed.) §957; 3 Pomeroy, Eq. Jurisp. (3d ed.) §1077 and notes; Clark,

Corporations (2d ed.) p. 498; note to *Beach* v. *Miller, supra,* pp. 300, 307.

·In this case we have a complaint involving a contract, so far as appellant is concerned, to render services to his company in the matter of management and superintendence of a part of its general manufacturing business, which was wholly outside his directorial duties. He had been performing similar duties, the allegations of the complaint show, under different terms as to compensation, for years. The contract was prepared by the company and urged upon appellant, and was executed by appellee's president and general manager, an independent agent. It is apparent that the company had full knowledge of the transaction, and if the president and general manager was clothed with authority to make the contract for the corporation, it is not only not void, but not necessarily voidable. The demurrer should have been sustained to the fourth paragraph of answer.

Appellee filed in the case a cross-complaint against appellant, demanding a recovery of damages alleged to have been sustained by it by the alleged breach by appellant of the former terminated contract between the parties by a negligent and improper performance upon his part of his duties as superintendent under that contract, prior to the termination of it by agreement of the parties.

Appellant first moved to strike out this cross-complaint, and then demurred to it for want of facts. Both the motion and the demurrer were overruled, and to sustain the claim that these rulings were error it is contended that the matters alleged are not germane to the matter constituting the cause of action alleged in the complaint, and that the cross-complaint is based on tort and not on contract. The contention of counsel for appellant, that the matters alleged in the cross-complaint are not germane, is correct, and the pleading is not good as a counterclaim in recoupment.

What appellant did in the performance of his duties as superintendent of appellee's manufacturing establishment during the continuance of the former contract and under its provisions had nothing to do with the issue tendered by the complaint for the breach of the last contract. Whether in executing the first contract he discharged his duties with scrupulous care and exact fidelity, or carelessly, improperly and faithlessly, is not necessarily or properly connected with that issue. The matter alleged in the cross-complaint is not connected with, nor does it grow out of, the cause of action pleaded in appellant's complaint. The mere fact that the contract sued on in the complaint had by its terms terminated the former contract, does not so connect negligent and wrongful acts of appellant, alleged in the cross-complaint to have been committed by him in the discharge of his duties under the first contract before its termination, with the cause of action stated in the complaint as to make them matters for cross-complaint as counterclaim. If the matters alleged in the cross-complaint state a cause of action it is one entirely independent of that depended on by appellant in his complaint.

It is settled by our decisions, that the new facts which may be introduced into a pending action by means of a cross-complaint under our counterclaim section of the code, which may embrace recoupment or matters cognizable in the cross-bill in equity, are such only as are necessary for the court to have before it in deciding the questions raised in the original action to enable it to do full and complete justice to all of the parties before it in respect to the cause of action upon which the complaint rests. If a defendant attempts to go beyond this, and to introduce by a cross-complaint in counterclaim new and distinct matter which does not grow out of that involved in the complaint, and which is not essential to the proper determination of it, although he may show a perfect case against the plaintiff, his pleadings will not be a cross-complaint, but an original

and independent cause of action, and as such it is not germane to the issue. *Douthitt* v. *Smith* (1880), 69 Ind. 463; *Washburn* v. *Roberts* (1880), 72 Ind. 213; *Standley* v. *Northwestern, etc., Ins. Co.* (1884), 95 Ind. 254; *Miller* v. *Roberts* (1886), 106 Ind. 63; *Blue* v. *Capital Nat. Bank* (1896), 145 Ind. 518; *Harris* v. *Randolph County Bank* (1901), 157 Ind. 120; *Heaton* v. *Lynch* (1894), 11 Ind. App. 408; *Buscher* v. *Volz* (1900), 25 Ind. App. 400; *Nickey* v. *Zonker* (1903), 31 Ind. App. 88; §355 Burns 1908, §350 R. S. 1881; 5 Ency. Pl. and Pr. 640, 641, 674, 678, 679.

But the rule just stated does not apply to a set-off, and it may embrace matter which is not germane to the main action and which constitutes an independent cause of 12. action, if it be pleaded in an action for a money demand on contract and if it arises out of debt, duty or contract, liquidated or not, held by the defendant at the time the suit was commenced and matured at or before the time it is offered. There must, of course, as a general rule, be mutuality in the demands. §§352, 353 Burns 1908, §§347, 348 R. S. 1881.

While the code (§352, *supra*) provides for answering a complaint by set-off, it is not strictly a defense, but is properly in the nature of a cross-action, may be pleaded as such, and must show a cause of action in favor of the pleader. *Boil* v. *Simms* (1877), 60 Ind. 162; *Daly* v. *National Life Ins. Co.* (1878), 64 Ind. 1; *Kennedy* v. *Richardson* (1880), 70 Ind. 524; *Rush* v. *Thompson* (1887), 112 Ind. 158, 165; *Johnson* v. *Tyler* (1891), 1 Ind. App. 387; *Lupton* v. *Taylor* (1907), 39 Ind. App. 412.

It is true, as claimed by counsel, that claims arising out of tort cannot be pleaded as set-offs in actions on contracts. *Indianapolis, etc., R. Co.* v. *Ballard* (1864), 22 Ind. 13. 448; *Roback* v. *Powell* (1871), 36 Ind. 515; *Harris* v. *Rivers* (1876), 53 Ind. 216; *Harris* v. *Randolph County Bank* (1901), 157 Ind. 120.

The pleading, which is the subject of counsel's attack,

does not, however, as we see it, sound in tort, but plainly seeks to recover damages for the breach of a contract. It sets out the contract, and alleges specific instances of appellant's failure of duty under it by which, it is alleged, appellee was damaged, and for this a recovery is asked. We do not think that the court erred in these rulings.

This cause was submitted to the Honorable John M. Morris, the regular judge of the trial court, for trial without a jury and due and proper request was made by the parties for special findings of facts. At the conclusion of the evidence and the arguments on April 3, 1907, the case was taken under advisement. The term of court then in progress did not expire until September following. On the evening of July 5, 1907, Judge Morris died from a sudden and unforeseen illness. It appears that sometime before his death he had indicated to one of counsel for appellee that his finding would be favorable to appellee; that about that time he had placed in the hands of the official stenographer of his court a draft of his findings, for the purpose of having copies made in typewriting, which was done by the stenographer, and the copies were delivered to him; that in the forenoon of July 5, he got the stenographer to make some changes in the findings; that he was in the court room that forenoon, and told the clerk and deputy clerk that he had his findings in the case prepared and ready to file, and would file them next day, and that the finding would be for appellee. Judge Morris never, in open court, announced his finding in the cause, and never filed any special findings with the clerk, but after his death there were found in his private office, away from the courthouse, the identical special findings of facts copied by the stenographer, as before stated, with conclusions of law stated thereon, with his signature appended thereto as judge of the Henry Circuit Court, and dated July 6, 1907. This paper was delivered by the family of Judge Morris on July 18, 1907, to the Honorable Ed.

Jackson, who had in the meantime, been appointed, and had qualified as the successor of Judge Morris, and on July 20, on motion of appellee, he signed it and ordered it filed and entered of record as the special finding of facts and conclusions of law in the cause, which was done in the absence of and without notice to appellant or his attorneys. Subsequently Judge Jackson, over appellant's objections, rendered judgment for appellee on this finding and the conclusions of law stated thereon. Before the rendition of judgment, appellant seasonably, but unsuccessfully, moved to strike out and reject the paper in question as the findings and conclusions of law in the cause, and also presented the question as a cause for a new trial.

The brief of counsel for appellee gives no aid to the court in determining the important question involved, beyond the terse and somewhat dogmatical assertion that "The court never dies. Judge Jackson had the power to adopt the special findings of facts that had been prepared and signed by his predecessor," and citing the cases of *Hedrick* v. *Hedrick* (1867), 28 Ind. 291, and *Reed* v. *Worland* (1878), 64 Ind. 216.

The case of *Hedrick* v. *Hedrick, supra,* is clearly distinguishable from this one. There, the succeeding judge rendered a judgment which was based on a verdict properly returned by a jury in a trial before his predecessor, and as the verdict specially found the facts upon which the judgment was based, such action was upheld.

In the case of *Reed* v. *Worland, supra,* it was held, in harmony with earlier and later decisions of this court, that a judge whose office has been abolished, or whose term of office has expired, cannot sign a bill of exceptions in a cause tried before him, but that such duty devolves upon his successor, and a distinction between that case and this one is manifest. Moreover, the soundness of these decisions has been doubted by high authority, so far as they sanction the power of the successor to settle and sign a bill as to matters

occurring in the case under the predecessor, saying that the better rule would be that a new trial should be awarded by the new judge, if there is a dispute as to what should go into the bill. Elliott, App. Proc. §799.

It would seem to be clear if such serious doubt of the power of a succeeding judge to sign a bill of exceptions exists that the granting of a new trial would be the better and juster practice, then there can be but little if any doubt that the action of Judge Jackson, in adopting as the special findings and conclusions of law in the case the findings and conclusions prepared by Judge Morris, and rendering judgment thereon, was without lawful authority and that instead the cause should have been retried. Had Judge Morris announced his finding in open court, and had it been filed before his death, a situation in legal effect the same as that in *Hedrick* v. *Hedrick, supra,* would have been presented, and in such case that Judge Jackson could have rendered judgment thereon is well sustained by authority. But the paper upon which Judge Jackson acted was merely a tentative and potential finding. It was in the breast of the court and subject to change and modification until its public announcement in court or filing gave it force as a finding, and it therefore could not be considered as determining the cause. Before it was so announced or filed appellant could have dismissed his action and so rendered it mere ineffective and worthless waste paper. *Beard* v. *Becker* (1880), 69 Ind. 498; *Cohn* v. *Rumely* (1881), 74 Ind. 120; *Mitchell* v. *Friedley* (1890), 126 Ind. 545; *Crafton* v. *Mitchell* (1893), 134 Ind. 320; *Halstead* v. *Sigler* (1905), 35 Ind. App. 419; §338 Burns 1908, §333 R. S. 1881.

A party to an action is entitled to a determination of the issues by the jury or judge that heard the evidence, and where a case is tried by the judge, and the issues remain undetermined at the death, resignation or expiration of the term of such judge, his successor cannot decide, nor make findings in, the case, without a trial

*de novo. Bahnsen* v. *Gilbert* (1893), 55 Minn. 334, 56 N. W. 1117; *Clanton* v. *Ryan* (1890), 14 Colo. 419, 24 Pac. 258; *In re Sullivan* (1904), 143 Cal. 462, 77 Pac. 153; *Conolly* v. *Ashworth* (1893), 98 Cal. 205, 33 Pac. 60; *Mace* v. *O'Reilly* (1886), 70 Cal. 231, 11 Pac. 721; *Norvell* v. *Deval* (1872), 50 Mo. 272, 11 Am. Rep. 413; *Weyman* v. *National Broadway Bank* (1880), 59 How. Prac. 331; *Putnam* v. *Crombie* (1861), 34 Barb. 232; *Cain* v. *Libby* (1884), 32 Minn. 491, 21 N. W. 739; *Ells* v. *Rector* (1875), 32 Mich. 379; 23 Cyc. 565.

The consideration of the case by Judge Morris never having reached the point of determination of the issues, the action of Judge Jackson in adopting the findings as his own was, in legal effect, but deciding the issues in a case in which he had not heard the evidence, or been in any way concerned prior to the time he decided it, and this, we hold, he had no right to do, but, on the contrary, the case should have been retried.

The judgment is reversed, with instructions to the lower court to grant appellant a new trial, to sustain the demurrer to the fourth paragraph of answer, and for further proceedings in harmony with this opinion.

Morris, J., did not participate in the decision of this cause.